■ KATHLEEN MEADE et al., Respondents, v J. MARC YLAND, M.D., et al., Defendants, and STEVEN F. WEST, M.D., et al., Appellants. [33 NYS3d 444]—

In an action, inter alia, to recover damages for medical malpractice, etc., the defendants Steven F. West and Raphael P. Davis separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Suffolk County (Pitts, J.), dated April 30, 2014, as denied their respective motion and cross motion for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them.

Ordered that the order is reversed, on the law, with one bill of costs, and the respective motion and cross motion of the defendants Steven F. West and Raphael P. Davis for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them are granted.

The plaintiff Kathleen Meade (hereinafter the injured plaintiff) received an epidural steroid injection from the defendant physician J. Marc Yland on July 22, 2008. She awoke from the injection unable to breathe, and unable to move any of her extremities or feel anything below the C5-C6 level. The injured plaintiff was taken to the emergency room at Stony Brook University Hospital (hereinafter Stony Brook). An MRI was taken on July 22, 2008. The defendant physician Steven F. West, a radiologist, testified at his deposition that he reviewed that MRI film on that date and did not see any evidence of an abnormal signal to the spinal cord that would suggest an edema from an infarct, a cord contusion, or some other pathological process. He reviewed a follow-up MRI film of the cervical region of the injured plaintiff's spine approximately two days later, and noted that it showed spinal cord infarction—a stroke of the spinal cord. The injured plaintiff remains quadriplegic.

The defendant physician Raphael P. Davis testified at his deposition that he was the on-call neurosurgeon at the time the injured plaintiff came to the Stony Brook emergency room. He testified that, after speaking to an emergency room physician's assistant over the telephone, he accessed and reviewed the July 22nd MRI film of the cervical region of the injured plaintiff's spine from his home computer, through Stony Brook's secure website. At his deposition, Davis again reviewed that MRI film and testified that it showed no evidence of spinal cord compression or hematoma. He stated that the July 22nd MRI film showed no abnormalities regarding the spinal cord or evidence of infarction. Davis further testified that there was no indication for neurosurgical intervention.

The injured plaintiff, and her husband suing derivatively, commenced this action on February 6, 2009. West and Davis moved and cross-moved, respectively, for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them. Each submitted affirmations from physicians who opined that they adhered to accepted practices in the services they rendered to the injured plaintiff. West's expert stated that evidence of spinal cord infarction is often not radiologically detectable until 24 hours or more after the incident.

In opposition to West's motion, the plaintiffs submitted the affirmation of a board-certified diagnostic radiologist, who stated that West departed from accepted practices by failing to order a diffusion MRI (as opposed to a normal MRI) as a follow-up, and that a diffusion MRI would have detected evidence of the injured plaintiff's spinal cord infarction. In opposition to Davis's cross motion, the plaintiffs submitted the affirmation of a board-certified neurosurgeon, who stated that Davis departed from accepted practices by refusing to examine the injured plaintiff in person. He further stated that, if Davis had done so, he would have noticed that an order for the administration of high-dose steroids had not yet been carried out, and that he would have ensured that the steroids were timely administered.

In an order dated April 30, 2014, the Supreme Court denied both the motion and the cross motion, concluding that there were triable issues of fact. West and Davis separately appeal.

"In order to establish liability for medical malpractice, a plaintiff must prove that the defendant deviated or departed from accepted community standards of practice and that such departure was a proximate cause of the plaintiff's injuries. On a motion for summary judgment, a defendant has the burden of establishing the absence of any departure from good and ac-

cepted medical practice or that the plaintiff was not injured thereby" (*Leavy v Merriam*, 133 AD3d 636, 637 [2015] [citations omitted]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Novick v South Nassau Communities Hosp.*, 136 AD3d 999 [2016]). "Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause" (*Lyons v McCauley*, 252 AD2d 516, 517 [1998], citing *Koehler v Schwartz*, 48 NY2d 807 [1979]).

"Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient" (*Chulla v DiStefano*, 242 AD2d 657, 658 [1997]; *see Markley v Albany Med. Ctr. Hosp.*, 163 AD2d 639, 640 [1990]).

Here, both West and Davis established, prima facie, that they discharged their respective duties to the injured plaintiff in accordance with accepted practices. West's expert concluded that West's interpretation of the July 22nd MRI film was correct, and in accordance with accepted practices. The plaintiffs' expert did not dispute this conclusion, but instead opined that West should have ordered a diffusion MRI to look for evidence of the injured plaintiff's condition. However, as West correctly contends, he had no such duty to do so. West's role was to interpret the MRI film and document his findings. He did not assume a general duty of care to independently diagnose the injured plaintiff's medical condition (*see Dockery v Sprecher*, 68 AD3d 1043, 1046 [2009]).

Similarly, the plaintiffs' argument that Davis had a duty to examine the injured plaintiff in person and to ensure that high-dose steroids were properly administered also is without merit. Davis's duty as a neurosurgical consultant was to determine whether neurosurgery was necessary. He determined that it was not. His expert stated that this conclusion was correct, and in accordance with accepted practices. The plaintiffs' expert did not dispute this conclusion, and did not argue that neurosurgery was necessary. The plaintiffs presented no evidence to raise a triable issue of fact as to whether Davis assumed a general duty of care to independently diagnose the injured plaintiff's medical condition (*see Dockery v Sprecher*, 68 AD3d at 1046).

Therefore, the Supreme Court should have granted both the motion and the cross motion for summary judgment dismissing the complaint and all cross claims insofar as asserted against West and Davis.

We note that even if the plaintiffs' contentions regarding the duties of care owed by Davis and West had merit, the plaintiffs

failed to raise a triable issue of fact as to proximate cause in response to said defendants' prima facie showing with respect to that issue.

In view of the foregoing, we do not address the parties' remaining contentions. Balkin, J.P., Leventhal, Austin and Duffy, JJ., concur.