■ MELINDA YOLANDA LEIGH, Also Known as MELINDA LEIGH, et al., Appellants, v ANNMARIE KYLE, M.D., et al., Defendants, and ALAN MECHANIC, M.D., et al., Respondents. (Appeal No. 1.) MELINDA YOLANDA LEIGH, Also Known as MELINDA LEIGH, et al., Appellants, v ANNMARIE KYLE, M.D., et al., Defendants, and ROBERT GOODMAN, M.D., et al., Respondents. (Appeal No. 2.) [39 NYS3d 45]—

In an action to recover damages for medical malpractice, etc., the plaintiffs appeal, as limited by their brief, from (1) so much of an order of the Supreme Court, Suffolk County (Tarantino, Jr., J.), dated February 28, 2014, as granted the motion of the defendants Alan Mechanic and Long Island Neurosurgical Associates, P.C., for summary judgment dismissing the complaint insofar as asserted against them, and (2) so much of an order of the same court dated September 3, 2014, as, upon reargument, in effect, vacated a determination in the order dated February 28, 2014, denying the motion of the defendants Barry Morgenstern, Robert Goodman, and Medical

Arts Radiology, also known as Huntington MRI, for summary judgment dismissing the complaint insofar as asserted against them, and thereupon granted that branch of the motion which was for summary judgment dismissing the complaint insofar as asserted against the defendants Robert Goodman and Medical Arts Radiology, also known as Huntington MRI.

Ordered that the orders are affirmed insofar as appealed from, with one bill of costs payable to the defendants Alan Mechanic and Long Island Neurosurgical Associates, P.C., and the defendants Robert Goodman and Medical Arts Radiology, also known as Huntington MRI, appearing separately and filing separate briefs.

The plaintiff Melinda Yolanda Leigh, also known as Melinda Leigh (hereinafter the injured plaintiff), underwent three surgical procedures to evacuate a cyst on her pituitary gland. The third surgery was performed by a nonparty neurosurgeon at the University of Virginia Medical Center.

On June 4, 2004, less than a month after her third surgery, the injured plaintiff was admitted to the defendant Huntington Hospital with complaints of headache, photophobia, and weakness. The injured plaintiff was admitted to the hospital through her primary care physician, the defendant Annmarie Kyle, who later testified that she was responsible for "coordinat[ing] the [injured plaintiff's] care." A number of consultations were directed upon the injured plaintiff's admission to the hospital, including a neurology consult, an infectious disease consult, an endocrinology consult, and a neurosurgical consult. The neurosurgical consultation was performed by the defendant Alan Mechanic on June 5, 2004. The defendants Barry Morgenstern and Robert Goodman performed and interpreted MRI/MRA and MRV imaging studies of the injured plaintiff's brain on June 4, 2004, and June 8, 2004.

The injured plaintiff was discharged from the hospital on June 11, 2004. She was re-admitted to the hospital about two weeks later, on an emergency basis, for a possible seizure. The plaintiffs allege that the injured plaintiff ultimately experienced a disabling stroke, which required additional surgical intervention and care.

The injured plaintiff, and her husband suing derivatively, commenced this action against the nine physicians who were involved in the injured plaintiff's treatment at Huntington Hospital from June 4, 2004 through June 11, 2004, and their associated medical practices. The plaintiffs alleged, inter alia, that the defendants committed professional malpractice by failing to discover and treat an infection in her sphenoid sinus, which ultimately caused her to suffer the stroke.

Mechanic and his practice, Long Island Neurosurgical Associates, P.C. (hereinafter together the Mechanic defendants), subsequently moved for summary judgment dismissing the complaint insofar as asserted against them. Goodman and his practice, Medical Arts Radiology, also known as Huntington MRI (hereinafter together the Goodman defendants), and Morgenstern also moved for summary judgment dismissing the complaint insofar as asserted against them.

In an order dated February 28, 2014, the Supreme Court granted the Mechanic defendants' motion for summary judgment. The court denied the motion of the Goodman defendants and Morgenstern as untimely. The Goodman defendants and Morgenstern subsequently moved for leave to reargue their summary judgment motion. In an order dated September 3, 2014, the court granted reargument, and thereupon awarded the Goodman defendants and Morgenstern summary judgment dismissing the complaint insofar as asserted against them. The plaintiffs appeal from portions of both the February 28, 2014 order and the September 3, 2014 order. We affirm the orders insofar as appealed from.

"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (*Stukas v Streiter*, 83 AD3d 18, 23 [2011]; *see Barrocales v New York Methodist Hosp.*, 122 AD3d 648, 649 [2014]). "A physician moving for summary judgment dismissing a complaint alleging medical malpractice must establish, prima facie, either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries" (*Gillespie v New York Hosp. Queens*, 96 AD3d 901, 902 [2012]; *see Barrocales v New York Methodist Hosp.*, 122 AD3d at 649). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, . . . but only as to the elements on which the defendant met the prima facie burden" (*Gillespie v New York Hosp. Queens*, 96 AD3d at 902; *see Stukas v Streiter*, 83 AD3d at 30).

Here, in support of their motion, the Mechanic defendants submitted evidence including Mechanic's deposition testimony and the detailed affirmation of an expert neurosurgeon, who opined that Mechanic did not deviate from the accepted standard of care in the field of neurosurgery in his treatment of the injured plaintiff. Specifically, the expert opined that on the single occasion that Mechanic saw the injured plaintiff as a

consulting neurosurgeon, there was no indication that any neurosurgical intervention was necessary. The expert further opined that testing for an infection of the sphenoid sinus was "not within the province of a neurosurgeon" and that, in any event, the facts available to Mechanic at the time that he saw the injured plaintiff did not indicate that she was suffering from an infection. The expert noted that Mechanic had not been involved in the decision to discharge the injured plaintiff from the hospital on June 11, 2004, and that Mechanic did not undertake to perform any additional professional services for her after his initial consultation. Accordingly, contrary to the plaintiffs' contention, the Mechanic defendants established, prima facie, their entitlement to judgment as a matter of law by demonstrating that Mechanic did not depart from accepted community standards of practice with respect to his participation in the injured plaintiff's care (*see Barrocales v New York Methodist Hosp.*, 122 AD3d at 649; *Gillespie v New York Hosp. Queens*, 96 AD3d at 902).

In opposition to the Mechanic defendants' prima facie showing, the plaintiffs submitted the affidavit of their neurosurgical expert, who opined that "the standard of care for every provider engaged in diagnosing and treating [the injured plaintiff], including Dr. Mechanic, absolutely required a complete investigation of the sphenoid sinuses and their content." The expert opined that Mechanic "had a duty to make sure that investigation of the sphenoid sinuses was considered and done." The expert concluded that Mechanic's failure to "ensure" that the injured plaintiff's sinuses were evaluated constituted a departure from the applicable standard of care.

"Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied upon by the patient" (*Markley v Albany Med. Ctr. Hosp.*, 163 AD2d 639, 640 [1990]; *see Meade v Yland*, 140 AD3d 931, 933 [2016]; *Covert v Walker*, 82 AD3d 825, 826 [2011]). In this case, the submissions of the Mechanic defendants demonstrated that Mechanic was not the injured plaintiff's treating physician; his role was limited to evaluating whether there were active neurosurgical issues that needed to be addressed. Contrary to the assertion of the plaintiffs' expert, the single examination by Mechanic, without more, did not create a further duty on his part to supervise or participate in other aspects of her care (*see Kleinert v Begum*, 144 AD2d 645, 647 [1988]; *see also Dockery v Sprecher*, 68 AD3d 1043, 1046 [2009]; *Mosezhnik v Berenstein*, 33 AD3d 895, 897 [2006]). The opinion of the plaintiffs' expert to the contrary

amounts to no more than a bare legal conclusion that is unsupported by the record and insufficient to raise a triable issue of fact (*see Perro v Schappert*, 47 AD3d 694, 694-695 [2008]; *Thompson v Orner*, 36 AD3d 791, 792 [2007]). Inasmuch as the plaintiffs failed to adduce any evidence that Mechanic assumed a general duty of care to independently treat the injured plaintiff's overall medical condition, or raise a triable issue of fact as to whether Mechanic deviated from the applicable standard of care in connection with his role as a consulting physician, the Mechanic defendants were entitled to judgment as a matter of law (*see Meade v Yland*, 140 AD3d at 933; *see also Covert v Walker*, 82 AD3d at 826; *Dockery v Sprecher*, 68 AD3d at 1046; *Mosezhnik v Berenstein*, 33 AD3d at 897; *Kleinert v Begum*, 144 AD2d at 647; *Markley v Albany Med. Ctr. Hosp.*, 163 AD2d at 640). Accordingly, the Supreme Court properly granted the Mechanic defendants' motion for summary judgment dismissing the complaint insofar as asserted against them.

The Goodman defendants were also entitled to judgment as a matter of law. In support of their motion, the Goodman defendants submitted evidence including the injured plaintiff's hospital records, and the detailed affirmation of an expert radiologist which was based on those records. These submissions established, prima facie, that Goodman did not deviate from the accepted standard of care, and, in any event, that his alleged departure was not a proximate cause of the injured plaintiff's injuries (*see Dockery v Sprecher*, 68 AD3d at 1046; *Mosezhnik v Berenstein*, 33 AD3d at 897; *Wasserman v Staten Is. Radiological Assoc.*, 2 AD3d 713, 714 [2003]). In opposition, the plaintiffs failed to raise a triable issue of fact (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). The expert evidence submitted by the plaintiffs in opposition to the Goodman defendants' motion was conclusory and speculative on the issue of proximate cause, and failed to address the specific assertions made by the Goodman defendants' expert (*see Feuer v Ng*, 136 AD3d 704, 707 [2016]; *Brinkley v Nassau Health Care Corp.*, 120 AD3d 1287, 1290 [2014]). Accordingly, upon reargument, the Supreme Court properly granted that branch of the Goodman defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them. Dillon, J.P., Cohen, Miller and Brathwaite Nelson, JJ., concur.