Romanelli v Jones (2020 NY Slip Op 00316)





Romanelli v Jones


2020 NY Slip Op 00316


Decided on January 15, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 15, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
JOSEPH J. MALTESE
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2017-03507
 (Index No. 1074/13)

[*1]Charles Romanelli, etc., appellant,
v
Sadie Moss Jones, etc., et al., defendants, Keith B. Lescale, etc., et al., respondents.


John H. Fisher, P.C. (Powers & Santola, LLP, Albany, NY [Michael J. Hutter], of counsel), for appellant.
Feldman, Kleidman, Coffey, Sappe & Regenbaum LLP, Fishkill, NY (Wayne M. Rubin of counsel), for respondents.



DECISION & ORDER
In an action to recover damages for medical malpractice, etc., the plaintiff appeals from a judgment of the Supreme Court, Putnam County (Paul I. Marx, J.), entered March 8, 2017. The judgment, upon an order of the same court dated February 15, 2017, granting that branch of the motion of the defendants Keith B. Lescale and Hudson Valley Perinatal Consulting, PLLC, which was for summary judgment dismissing the complaint insofar as asserted against them, dismissed the complaint insofar as asserted against those defendants. The notice of appeal from the order is deemed to be a notice of appeal from the judgment (see CPLR 5512[a]).
ORDERED that the judgment is reversed, on the law, with costs, that branch of the motion of the defendants Keith B. Lescale and Hudson Valley Perinatal Consulting, PLLC, which was for summary judgment dismissing the complaint insofar as asserted against them is denied, the complaint is reinstated insofar as asserted against those defendants, and the order is modified accordingly.
On September 30, 2011, the plaintiff's decedent, Gia McGinley, died as a result of a uterine rupture and hemorrhage sustained during an attempted vaginal birth after caesarian section (hereinafter VBAC) at the decedent's home assisted by certified nurse midwife Sadie Moss Jones. Thereafter, the plaintiff, as the administrator of the decedent's estate and in his individual capacity, commenced this action against, among others, Keith B. Lescale and his medical practice, Hudson Valley Perinatal Consulting, PLLC (hereinafter together the defendants). Lescale, a board-certified obstetrician and gynecologist specializing in maternal-fetal medicine, provided blood testing and ultrasound studies to the decedent on four visits during the decedent's pregnancy, the last of which occurred two days before the decedent's death.
The plaintiff alleged in the bill of particulars, inter alia, that Lescale departed from the standard of care in failing to advise the decedent and Moss Jones against a home birth based upon the fact that the fetus was suspected to be macrosomic, or very large for its gestational age, the decedent's advanced age, the fact that the decedent was past her due date, and the fact that the decedent had previously given birth by cesarian section. The plaintiff further alleged that Lescale [*2]failed to inform the decedent that "a nurse midwife was not an appropriate care provider for her high risk pregnancy and labor and delivery," and failed to advise the decedent and Moss Jones that a prior cesarean delivery was "an absolute contraindication to planned home birth."
The Supreme Court granted that branch of the defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them. The court determined that the defendants established that it was not within Lescale's limited scope of duty to, inter alia, advise the decedent of the risks attendant to VBAC home birth under the circumstances, and that, even if it were within the scope of his duty, Lescale established, as a matter of law, that the alleged failure to so advise or warn the decedent was not a proximate cause of the decedent's injury or death. We reverse.
"Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied upon by the patient" (Leigh v Kyle, 143 AD3d 779, 782 [internal quotation marks omitted]). The existence and scope of a physician's duty of care is a question of law to be determined by the court (see Kingsley v Price, 163 AD3d 157, 161; Koeppel v Park, 228 AD2d 288, 289).
Here, in support of their contention that it was not within Lescale's limited scope of duty to advise the decedent and Moss Jones against the planned VBAC home birth, the defendants relied upon Lescale's affidavit, in which he averred that, although he is board-certified in obstetrics and gynecology, he limited his practice solely to maternal-fetal medicine. In this regard, his practice is "entirely consultation based, consisting primarily [of] performing and interpreting ultrasounds." Lescale averred that his involvement with issues concerning delivery was "quite limited," and he did not "ever get involved in or make recommendations regarding the method of delivery."
Lescale averred that he would generally see a pregnant patient for three ultrasound scans, with the final scan performed at 32 to 34 weeks of gestation. However, on September 28, 2011, when the decedent's pregnancy was at over 41 weeks of gestation, Lescale performed a fourth biophysical profile ultrasound upon the referral of Moss Jones. At that visit, Lescale estimated the fetal weight as approximately 10 pounds, 9 ounces, which is over the 90th percentile for the gestational age. Lescale's medical records indicated that the fetus was "suspected" to be macrosomic. Since Moss Jones's referral indicated that the decedent did not want to be informed of the fetal weight, Lescale did not tell the decedent the fetal weight, but, instead, only told the plaintiff.
Lescale stated in his affidavit that he was aware "at this visit that [the decedent] still planned a trial of labor at home," and averred that the decedent did not ask him for his opinion regarding her plan and its risks. He stated that "home deliveries and VBACs were outside [his] area of expertise, and [he] was not familiar with their risks." Lescale opined that, within his limited duty, the standard of care did not require him to inform the decedent of the risks and complications associated with a VBAC home birth with a nurse midwife as he was "not the medical provider primarily handling" the decedent's pregnancy, and was not requested by the patient or her midwife to give his "input into the method and place of the delivery," including arrangements in the event of an emergency.
Even so, Lescale averred that, on the evening of September 28, 2011, he nonetheless advised Moss Jones to "proceed with caution, as a large baby may develop shoulder dystocia, a condition where delivery is impeded because the shoulder of the newborn [is] blocked by the mother's pubic bone, and because large babies tend to progress slowly, which may ultimately require delivery by caesarean section."
The defendants' medical record entries dated September 28, 2011, note "advanced maternal age," history of "preterm delivery 35 weeks twins," previous cesarean section, "large for dates," and "planning for VBAC." The medical records further indicate that the ultrasound findings were "discussed with patient."
In further support of their motion, the defendants submitted the transcript of Moss Jones's deposition testimony. Moss Jones testified that she began practicing home birth as a primary midwife in 2010. Although she had no experience with VBAC home births, she had been involved with VBACs in a hospital setting 20 to 30 times. As relevant to the issue of the defendants' scope of duty, Moss Jones testified that she considered Lescale to be a "collaborating physician" (see Education Law § 6951[1]) for the decedent's pregnancy "in the sense that he did her ultrasounds and consulted regarding her situation." Moss Jones further testified that at 8:00 p.m. on September 28, 2011, Lescale called her to discuss the decedent's biophysical profile ultrasound, including Lescale's estimation of the fetal weight.
In opposition, the plaintiff submitted an expert affirmation from a board-certified obstetrician and gynecologist. The plaintiff's expert opined that Lescale's alleged departures from the standard of care occurred on September 28, 2011. Relying upon Moss Jones's testimony that she considered Lescale to be her "collaborating physician" (see Education Law § 6951[1]), the plaintiff's expert explained that Lescale's duties included "consultation, collaborative management and referral to address the health status and risks of a nurse midwife's patients and that includes plans for emergency medical gynecological and/or obstetrical coverage." The plaintiff's expert stated that, as a board-certified obstetrician and gynecologist, Lescale "possessed the education, training and experience concerning the risks" of a VBAC at home, combined with the decedent's particular risk factors of suspected macrosomia, advanced maternal age, and a pregnancy that was past the expected due date. The plaintiff's expert further opined that, under the circumstances, Lescale should have informed the decedent that a VBAC at home was "associated with a substantially increased risk of neonatal and maternal death when compared with planned hospital birth." He opined that Lescale should have warned the decedent and Moss Jones that "the most serious complication of a [VBAC] is uterine rupture[,] and if that occurs at home, it will almost certainly result in the death of the mother and baby and it is contraindicated" by the American College of Obstetricians and Gynecologists. The expert opined that Lescale departed from the standard of care by failing to tell Moss Jones that "she should not . . . proceed with a [VBAC] at home."
The plaintiff also submitted his own affidavit, in which he averred that on September 28, 2011, Lescale assured him and the decedent that "everything looked great." The plaintiff averred that Lescale did not "tell us that he had any concerns about [the decedent's] plan for a trial of labor after cesarean delivery at home."
Although Lescale, a board-certified obstetrician and gynecologist, purported to limit the scope of his duty to the field of maternal-fetal medicine, and the performance and interpretation of ultrasounds, it was within such limited scope of duty to consult with the decedent and Moss Jones on September 28, 2011, concerning his diagnosis of suspected fetal macrosomia, and how such diagnosis would increase the risks of a VBAC home birth, given all of the other risk factors that were present. Given such risks, it was also within the scope of Lescale's duty to advise the decedent and Moss Jones against proceeding with the planned VBAC home birth. The record shows that Moss Jones referred the decedent to Lescale for his advice as a board-certified obstetrician and gynecologist, that Moss Jones considered Lescale to be a "collaborating physician" (see Education Law § 6951[1]), and that Lescale saw the decedent on four separate visits for testing and consultation (see Cole v Champlain Val. Physicians' Hosp. Med. Ctr., 116 AD3d 1283; see also Davis v South Nassau Communities Hosp., 26 NY3d 563, 569-579). Contrary to the defendants' contention, Lescale's duty to advise and warn the decedent "cannot be avoided by the existence of a treating [nurse midwife] who has the same, or even a broader, obligation" (Nieves v Montefiore Med. Ctr., 305 AD2d 161, 165). Lescale's averment that he had no role in providing advice or consultation regarding the decedent's pregnancy and delivery is belied by his own averment that on September 28, 2011, he telephoned Moss Jones and advised her, among other things, to "proceed with caution."
Accordingly, we disagree with the Supreme Court's conclusion that, under the circumstances, it was not within the scope of Lescale's duty to warn the decedent and Moss Jones of the enhanced risks, including uterine rupture and death, attendant to the plan to have a VBAC home birth, and to advise against a VBAC home birth.
We also disagree with the Supreme Court's determination that the defendants demonstrated, prima facie, that any failure by Lescale, inter alia, to warn and advise the decedent and Moss Jones was not a proximate cause of the decedent's injury or death. As the summary judgment movants, the defendants had the initial burden of establishing, prima facie, that the alleged departure from accepted community standards was not a proximate cause of the decedent's alleged injuries or death (see Mitchell v Lograno, 108 AD3d 689, 691; Lau v Wan, 93 AD3d 763, 765).
"The overarching principle governing determinations of proximate cause is that a defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury" or death (Hain v Jamison, 28 NY3d 524, 528-529 [internal quotation marks omitted]; see Mazella v Beals, 27 NY3d 694, 706; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 314). "Typically, the question of whether a particular act of negligence is a substantial cause of the plaintiff's injuries [or death] is one to be made by the factfinder, as such a determination turns upon questions of foreseeability and what is foreseeable and what is normal may be the subject of varying inferences" (Hain v Jamison, 28 NY3d at 529 [internal quotation marks omitted]; see Kriz v Schum, 75 NY2d 25, 34).
"When a question of proximate cause involves an intervening act, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence" (Hain v Jamison, 28 NY3d at 529 [internal quotation marks omitted]; see Mazella v Beals, 27 NY3d at 706). "It is only where the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, that it may possibly break the causal nexus" (Hain v Jamison, 28 NY3d at 529 [alterations and internal quotation marks omitted]).
Although Moss Jones obtained the decedent's informed consent for a VBAC home birth, and on September 28, 2011, had a further discussion regarding the risks of a home birth based upon Lescale's ultrasound findings, the record does not establish, as a matter of law, that the decedent would have rejected appropriate warnings and advice by Lescale (see Lambos v Weintraub, 256 AD2d 446, 447; see also Lesniak v Stockholm Obstetrics & Gynecological Servs., P.C., 132 AD3d 959). Contrary to the Supreme Court's determination, the fact that the decedent had training as a doula and had expressed her own independent views regarding her birth plans and the risks of a VBAC home birth also does not establish, as a matter of law, that she would not have heeded appropriate warnings and advice by Lescale who, unlike Moss Jones and herself, was a board-certified obstetrician and gynecologist. Indeed, the circumstances on September 28, 2011, were such that Moss Jones referred the decedent to Lescale for a fourth ultrasound based upon the decedent being past due and an imminent planned VBAC home birth. Whether the decedent would have heeded appropriate warnings and advice by Lescale in light of, inter alia, the purported warnings she was given by Moss Jones, or her own views, is for the jury to decide (see Johnson v Johnson Chem. Co., 183 AD2d 64, 70).
The Supreme Court also determined that the defendants' motion should be granted for the additional reason that Moss Jones's "decision, in the presence of [the plaintiff], to send the police away after the fetal heartbeat was initially not detected [during labor] constitutes an intervening cause which severs any alleged causal connection between . . . Lescale's alleged failure to inform [the decedent] of the risks of VBAC home delivery." The defendants did not raise this argument, and the court should not have granted the defendants' motion on a ground not litigated by the parties (see Rosenblatt v St. George Health & Racquetball Assoc., LLC, 119 AD3d 45, 54; see also Aurora Loan Servs., LLC v Moreno, 166 AD3d 933, 934). Moreover, the record did not establish, prima facie, that any action by Moss Jones during the decedent's trial of labor at home was not a "normal or foreseeable consequence of the situation created by the defendant's negligence" in, inter alia, failing to advise against the VBAC home birth in the first place (Hain v Jamison, 28 NY3d at 529 [internal quotation marks omitted]; see Mazella v Beals, 27 NY3d at 706).
Accordingly, we disagree with the Supreme Court's determination granting that branch of the defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them.
LEVENTHAL, J.P., MALTESE, BARROS and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court