Mann v Okere (2021 NY Slip Op 04014)





Mann v Okere


2021 NY Slip Op 04014


Decided on June 23, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 23, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
COLLEEN D. DUFFY, JJ.


2017-11130
 (Index No. 65167/12)

[*1]Kandace K. Mann, etc., respondent,
v
Henry Okere, et al., defendants, Kenneth Blumberg, et al., appellants.


Catania, Mahon, Milligram & Rider, PLLC, Newburgh, NY (Jeffrey S. Sculley of counsel), for appellants.
Meagher & Meagher, P.C., White Plains, NY (Merryl F. Weiner of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the defendants Kenneth Blumberg and Hudson Valley Radiology Associates, PLLC, appeal from an order of the Supreme Court, Westchester County (Linda S. Jamieson, J.), dated September 15, 2017. The order, insofar as appealed from, denied those defendants' motion for summary judgment dismissing the complaint insofar as asserted against them.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and the motion of the defendants Kenneth Blumberg and Hudson Valley Radiology Associates, PLLC, for summary judgment dismissing the complaint insofar as asserted against them is granted.
On April 20, 2010, the plaintiff's decedent, Lynell Green (hereinafter the decedent), obtained a prescription for a mammogram from the defendant physician Henry Okere. According to Okere, the decedent most likely called and asked for the prescription, which was then faxed to the defendant Hudson Valley Radiology Associates, PLLC (hereinafter Hudson Valley), the same day. The prescription itself did not specify whether it was for screening or diagnostic purposes, and did not indicate that the decedent had reported any particular complaint.
The following day, April 21, 2010, the decedent presented at nonparty Mid Rockland Imaging (hereinafter MRI) to undergo the mammogram. Upon her arrival, the decedent allegedly told an MRI employee that she felt a lump in her breast, but the employee told the decedent that her doctor had scheduled her for a routine mammogram. The mammography worksheet signed by the decedent indicated that the reason for the mammogram was "routine," but also noted that the decedent experienced pain and/or soreness in the left breast. The worksheet made no mention of any lump in the decedent's breast.
The defendant Kenneth Blumberg, a radiologist employed by Hudson Valley, read and interpreted the decedent's April 21, 2010 mammogram. In his report, Blumberg noted the purpose of the exam as screening, and he further explained, at his deposition, that he understood from the prescription and the mammography worksheet that the mammogram was a routine [*2]procedure. The report stated that there were no suspicious mammographic findings and recommended another routine screening in one year. Blumberg never spoke with the decedent, and never spoke with Okere concerning the decedent.
In May 2011, the decedent was diagnosed with cancer in her left breast. She died on August 20, 2014. Prior to her death, the decedent commenced this action against Blumberg and Hudson Valley (hereinafter together the radiology defendants), among others. In 2015, the plaintiff, Kandace K. Mann, the administratrix of the decedent's estate, filed an amended verified complaint reflecting the decedent's death and asserting an additional cause of action to recover damages for wrongful death. As amplified by the bill of particulars, the plaintiff alleged that the radiology defendants were negligent by, inter alia, ignoring the decedent's complaints of breast pain and of feeling a lump in her breast.
After the completion of discovery, the radiology defendants moved for summary judgment dismissing the complaint insofar as asserted against them, and submitted, among other things, the affirmation of their expert, Shari Siegel-Goldman, a radiologist. The plaintiff opposed the motion and submitted, inter alia, the affidavits of a name-redacted gynecologist, a name-redacted oncologist, and a name-redacted breast surgeon. By order dated September 15, 2017, the Supreme Court, among other things, denied the radiology defendants' motion. The radiology defendants appeal.
"'In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries'" (Hutchinson v New York City Health & Hosps. Corp., 172 AD3d 1037, 1039, quoting Stukas v Streiter, 83 AD3d 18, 23). "Thus, in moving for summary judgment, a physician defendant must establish, prima facie, 'either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries'" (Hutchinson v New York City Health & Hosps. Corp., 172 AD3d at 1039, quoting Lesniak v Stockholm Obstetrics & Gynecological Servs., P.C., 132 AD3d 959, 960). Once a defendant makes this prima facie showing, "the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden" (Donnelly v Parikh, 150 AD3d 820, 822 [ellipses and internal quotation marks omitted]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324; Hutchinson v New York City Health & Hosps. Corp., 172 AD3d at 1039).
"Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient" (Donnelly v Parikh, 150 AD3d at 822 [internal quotation marks omitted]; see Meade v Yland, 140 AD3d 931, 933). "The question of whether a physician owes a duty to the plaintiff is a question for the court, and is not an appropriate subject for expert opinion" (Donnelly v Parikh, 150 AD3d at 822 [brackets and internal quotation marks omitted]; see Burtman v Brown, 97 AD3d 156, 161).
Here, the radiology defendants established, prima facie, that Blumberg discharged his duty to the decedent in accordance with accepted practice for radiologists (see Meade v Yland, 140 AD3d at 933). Siegel-Goldman, the radiology defendants' expert, concluded that Blumberg's interpretation of the April 21, 2010 mammogram was in conformity with accepted practices.
Contrary to the views expressed by our dissenting colleague, we do not find, under the circumstances of this case, that Blumberg assumed any duty of care toward the decedent beyond that of reading the mammography images and documenting his findings. The record evidence shows Okere requested that Hudson Valley perform a routine screening mammogram, and the mere fact that the decedent indicated on the mammography worksheet that she experienced some pain in her left breast did not impose a heightened duty of care on Blumberg, who never saw or treated the decedent, and whose only role was to interpret the mammography images and report his findings to the prescribing physician (compare Neyman v Doshi Diagnostic Imaging Servs., P.C., 153 AD3d 538, 546, Meade v Yland, 140 AD3d at 933, Covert v Walker, 82 AD3d 825, 826, and Mosezhnik v Berenstein, 33 AD3d 895, 897, with Romanelli v Jones, 179 AD3d 851).
While our dissenting colleague relies heavily on Romanelli v Jones (179 AD3d 851), the facts of that case are quite unlike the circumstances presented here. The plaintiff's decedent in Romanelli, Gia McGinley, died as a result of a uterine rupture and hemorrhage sustained during an attempted vaginal birth after caesarean section at McGinley's home, assisted by a certified nurse midwife (id. at 852). The defendants in Romanelli included the midwife as well as the board-certified obstetrician and gynecologist to whom the midwife had referred McGinley to act as a "collaborating physician" pursuant to Education Law § 6951(1) (Romanelli v Jones, 179 AD3d at 855). While the collaborating physician in Romanelli maintained that he provided no medical advice or consultation regarding McGinley's pregnancy and delivery and that his role was strictly limited to performing and interpreting ultrasounds, the evidence plainly showed otherwise. First, it is important to make clear that the collaborating physician met with McGinley on four separate occasions for testing and consultation (id.). Further, on the final visit, which was two days before McGinley died, the collaborating physician noted his suspicion that the fetus was macrosomic and specifically advised the midwife to "'proceed with caution'" as a caesarean section may ultimately be required (id. at 853). Under the circumstances presented in Romanelli, this Court found that the collaborating physician's duty of care was not limited to the performance and interpretation of ultrasounds, but also specifically included the duty to advise McGinley, as well as the midwife, against a home birth (see id. at 855-856).
By contrast, Blumberg in this case was one of many radiologists who worked at Hudson Valley. He never met or examined the decedent, and was simply asked, on a single occasion, to interpret the images of what he understood to be a routine mammogram.
Nor do we ascribe any relevance to the fact that Blumberg's report, like all other similar reports generated by Hudson Valley radiologists, ended with the formulaic closing salutation thanking the referring physician "for the opportunity to participate in the care of this patient." Absent any record evidence that Dr. Blumberg actively participated in the decedent's care—like the collaborating physician in Romanelli—politeness alone will not give rise to a heightened duty of care.
In opposition to the radiology defendants' prima facie case, the plaintiff failed to raise a triable issue of fact. Accordingly, the Supreme Court should have granted the radiology defendants' motion for summary judgment dismissing the complaint insofar as asserted against them.
In light of our determination, we need not reach the parties' remaining contentions.
CHAMBERS, J.P., AUSTIN and MILLER, JJ., concur.
DUFFY, J., dissents, and votes to affirm the order insofar as appealed from, with the following memorandum:
For the reasons that follow, I disagree with the majority's reversal of the Supreme Court's order dated September 15, 2017 (hereinafter the September 2017 order), insofar as appealed from, which denied the motion of the defendant Kenneth Blumberg and his employer, the defendant Hudson Valley Radiology Associates, PLLC (hereinafter Hudson Valley, and hereinafter together with Blumberg, the radiology defendants), for summary judgment dismissing the complaint insofar as asserted against them. I submit that the record here demonstrates that (1) the radiology defendants owed a duty of care to Lynell Green (hereinafter the decedent) more expansive than simply interpreting the mammography films and documenting findings (see Romanelli v Jones, 179 AD3d 851, 855-856); (2) the radiology defendants failed to establish, prima facie, that they met this more expansive scope of duty of care owed to the decedent; and (3) the radiology defendants also failed to show that Blumberg's actions were not the proximate cause of the decedent's injuries. Since the radiology defendants failed to meet their prima facie burden for summary judgment, I agree with the Supreme Court's denial of their motion and would affirm the September 2017 order insofar as appealed from.
Prior to her death, the decedent commenced this action against the radiology [*3]defendants, among others, seeking damages for injuries she sustained arising out of medical malpractice, alleging, inter alia, that the radiology defendants proximately caused her injuries by their failure to provide her with the applicable standard of care with respect to diagnosing and treating the cancer in her left breast. She died on August 20, 2014.
Thereafter, in 2015, the plaintiff, Kandace K. Mann, the administratrix of the decedent's estate, filed an amended verified complaint asserting an additional cause of action to recover damages for wrongful death. As amplified by the bill of particulars, the plaintiff alleged that the radiology defendants were negligent, among other things, by ignoring the decedent's complaints that she had breast pain, as well as failing to timely recommend appropriate follow-up clinical care and diagnostic testing.
The radiology defendants subsequently moved for summary judgment dismissing the complaint insofar as asserted against them, and submitted, inter alia, the affirmation of their radiology expert, the medical records of the decedent, and transcripts of the deposition testimony of the decedent and the decedent's treating physicians. The plaintiff opposed the motion and submitted, among other things, expert affidavits of a gynecologist, an oncologist, and a breast surgeon. The Supreme Court, inter alia, denied the motion in its September 2017 order, determining that the radiology defendants failed to establish their prima facie entitlement to judgment as a matter of law. I agree.
The deposition transcript and medical records of the decedent submitted by the radiology defendants indicate that, on April 21, 2010, the decedent went for a mammogram at nonparty Mid Rockland Imaging (hereinafter MRI), and told an MRI technician that she felt a lump and pain in her left breast. The prescription for the mammogram had been faxed to Hudson Valley by the decedent's primary care physician and did not indicate whether it was for a diagnostic or screening mammogram. On that date, MRI directed the decedent to complete the "REASON FOR TODAY'S MAMMOGRAM" section of a mammography worksheet created by MRI. The decedent indicated "left breast pain." The mammography worksheet also contained a notation by the technician that the decedent was experiencing pain in her left breast, and that worksheet was provided to Blumberg, one of Hudson Valley's radiologists, along with the mammography films for his review. The next day, Blumberg read and interpreted the decedent's mammography films. However, despite the information in the mammography worksheet, in the section designated "HISTORY" in the mammography report created by Blumberg (hereinafter the April 2010 report), Blumberg indicated that the decedent did not have a family history of breast cancer, erroneously noted the reason for the exam as "screening (asymptomatic)," and documented that the decedent "states that she has not had a clinical breast exam." The April 2010 report indicated that there were no suspicious mammographic findings and, in a section entitled "Recommendation," recommended a "routine screening mammogram of both breasts in 1 year" (emphasis added). The section of the report designated "ASSESSMENT" noted that the results were "[b]enign." At the end of the report, Blumberg included the following message for the decedent's primary care physician: "Thank you for the opportunity to participate in the care of this patient" (emphasis added). At his deposition, Blumberg testified that he should have put "screening (left breast pain)" instead of "screening (asymtomatic)" in his April 2010 report since the mammography worksheet set forth that the decedent complained of pain in her left breast.
Significantly, in November 2006, a prior mammography report from Hudson Valley, drafted by another one of its radiologists, indicated a negative mammography finding but noted that the decedent had complained of bilateral breast pain. In the section of the report entitled "Recommendations," that radiologist recommended a clinical follow up with respect to that complaint and, upon such follow up, the decedent was instructed to return to Hudson Valley for both "a diagnostic mammogram and an ultrasound" if the breast pain was determined to be focal and non-cyclical at the recommended follow-up clinical examination (emphasis added). Hudson Valley further recommended that the decedent have a routine screening mammogram of both breasts in a year if the clinical follow up was negative. The same note thanking the decedent's doctor for the opportunity to participate in the care of the decedent was included at the end of the report.
The decedent's medical records also show that three months after the April 2010 report, in July 2010, the decedent was seen by the defendant gynecologist Joseph Maselli, who was employed by the defendant OBS/GYN of Rockland. Maselli's records reflect that the decedent complained to him of both pain and lumps in her left breast and that he had obtained and reviewed the April 2010 report. Maselli performed a breast exam and did not note any abnormalities or give the decedent any follow-up clinical and/or testing recommendations. According to Maselli's deposition testimony, a transcript of which was also submitted by the radiology defendants in support of their motion, a "diagnostic mammogram" is indicated if a patient has a family history of breast cancer, a palpated lump and/or "persistent breast pain" that is "not . . . cyclical"(emphasis added). Maselli testified that he would generally order a "diagnostic mammogram [and] ultrasound" upon a determination that a patient's breast pain is "persistent" and "not . . . cyclical" (emphasis added).
The medical records also show that in February 2011, the decedent was examined by an oncologist employed by Goldberg & Mathew Medical Associates, PLLC (hereinafter Goldberg and Mathew), due to her continued complaint of pain in her left breast and, in April 2011, another physician with Goldberg and Matthew sent a prescription to Hudson Valley for the decedent's annual mammogram.
Thereafter, in April 2011, another Hudson Valley radiologist read and interpreted the decedent's mammography films, and noted in her report that there was a questionable cluster of microcalcifications in the left breast. That radiologist noted the need for additional imaging evaluation of the left breast and recommended a special view mammogram of that breast and a routine screening mammogram of the right breast in a year. The notes indicate that Hudson Valley planned to contact the decedent to recommend and schedule this further radiological testing of the left breast. The same note expressing thanks for the opportunity to participate in the care of the decedent was included at the end of the report.
In May 2011, the decedent returned to Hudson Valley to follow through on the recommendations it had made to her, and a diagnostic mammogram and an ultrasound of the decedent's left breast were performed. Reports created by Hudson Valley, dated May 11, 2011 (hereinafter the May 2011 reports), indicated that the results from the ultrasound looked "[s]uspicious" and, in the "Recommendation" sections of the May 2011 reports, recommended that a "[n]eedle biopsy of the left breast" be conducted. The radiologist also noted that Hudson Valley had recommended to the decedent that she schedule the recommended biopsy. Each of the May 2011 reports also included the same comment indicating thanks for "the opportunity to participate in the care" of the decedent (emphasis added).
After the recommended biopsy was performed at Nyack Hospital, the decedent was diagnosed with cancer of the left breast in May 2011. She died on August 20, 2014.
To prevail on a motion for summary judgment in a medical malpractice action, a defendant must make a prima facie showing either that there was no deviation or departure from accepted community standards of practice or that any such deviation or departure was not a proximate cause of the plaintiff's injuries (see Oliver v New York City Health & Hosps. Corp., 178 AD3d 1057, 1058; Gray v Patel, 171 AD3d 1141, 1143). The failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853). The defendant's evidence must be viewed in the light most favorable to the plaintiff and, since summary judgment is considered a drastic remedy, it should be granted only when there is no doubt as to the absence of triable issues of fact (see Stukas v Streiter, 83 AD3d 18, 30).
Here, the central issue in determining whether summary judgment was appropriately denied turns on the scope of the duty owed by the radiology defendants to the decedent. The question of whether a physician owes a duty to a plaintiff and the scope of that duty is a question for the court (see Romanelli v Jones, 179 AD3d at 853-854). The duty of care is defined by those medical functions undertaken by the physician and relied upon by the patient (see id. at 852; see e.g. Mosezhnik v Berenstein, 33 AD3d 895, 897).
The majority's award of summary judgment to the radiologist defendants in this case—despite the numerous facts showing that the radiology defendants assumed a duty of care to the decedent which included making medical recommendations and scheduling further testing—not only fails to afford the plaintiff the most favorable view of the radiology defendants' evidence as required on this motion (see Stukas v Streiter, 83 AD3d at 30); but also represents a dramatic departure from the analysis used by this Court—most recently in Romanelli v Jones (179 AD3d 851)—in assessing the scope of the duty of care owed by a physician to his or her patient. Although a radiologist's role typically may be limited to interpreting mammography films and documenting his or her findings, where, as here, the radiology defendants also scheduled and recommended further testing (see e.g. Mosezhnik v Berenstein, 33 AD3d at 897), a more expansive scope of duty of care is owed by the radiology practice and its radiologists (see e.g. Romanelli v Jones, 179 AD3d at 855-856). Contrary to the conclusion of my colleagues in the majority, the record is replete with evidence that Hudson Valley and its radiologists assessed the decedent's symptoms, along with the mammography films, recommended follow-up clinical care and testing, and scheduled further testing when they deemed such to be warranted. Indeed, the majority's dismissive treatment of the words at the end of each of the mammography reports created by Hudson Valley as mere "politeness" fails to afford the plaintiff the favorable inference to which she is entitled with respect to that evidence. Here, the words "Thank you for the opportunity to participate in the care of this patient" are not simply polite utterances. Taken together with the activities engaged in by the radiology defendants, the words actually define the scope of the duty that Hudson Valley and its radiologists assumed with respect to the decedent during her six visits to Hudson Valley between 2005 and 2011—they did not simply read and interpret mammograms, they "participated in the care" of the decedent. Blumberg, as Hudson Valley's employee and agent, is also subject to that expanded scope of duty of care (see generally Mduba v Benedictine Hosp., 52 AD2d 450, 452-453).
In addition to failing to address the contents of the radiology defendants' medical records for the decedent, the cases cited by the majority in support of their position—Neyman v Doshi Diagnostic Imaging Servs., P.C. (153 AD3d 538), Meade v Yland (140 AD3d 931), Covert v Walker (82 AD3d 825), and Mosezhnik v Berenstein (33 AD3d 895)—contain facts inapposite to and distinguishable from the facts here and do not support a reversal of the Supreme Court's denial of summary judgment. In each of the cases relied upon by the majority, the facts defined the duty of care owed, and those facts demonstrated that the scope of the care provided by the radiologists in each of those cases was limited to interpreting a sonogram, an MRI, a CT scan, or mammography films, and documenting findings (see Neyman v Doshi Diagnostic Imaging Servs., P.C., 153 AD3d at 546; Meade v Yland, 140 AD3d at 933; Covert v Walker, 82 AD3d at 826; Mosezhnik v Berenstein, 33 AD3d at 897). There, those radiologists did not schedule or recommend further testing or independently diagnose the plaintiffs' medical conditions—which are examples of medical care that manifest a more expansive duty of care than engaged in by a typical radiologist (see e.g. Mosezhnik v Berenstein, 33 AD3d at 897). Here, the types of activities undertaken by the radiology defendants with respect to the decedent's care are indicative of the expansive duty of care. Unlike the radiologists in the cases cited by the majority, the radiology defendants here did not limit the scope of their duty of care to simply interpreting the mammography films and documenting their findings.
Recently, this Court soundly rejected a defendant physician's contention that he owed a plaintiff's decedent only a limited duty of care when the record reflected that the physician's role also included providing recommendations as to her care (see Romanelli v Jones, 179 AD3d at 855-856). In Romanelli, this Court reversed the Supreme Court's award of summary judgment dismissing the complaint insofar as asserted against the medical defendants. There, this Court rejected the contention that the defendant obstetrician and his medical practice had a limited duty of care to the decedent simply because his practice consisted of the performance and interpretation of ultrasounds (see id. at 855). This Court determined that the defendant obstetrician's contention that his role in the care of the decedent was limited to providing blood tests and ultrasound studies to the decedent on four visits during her pregnancy, and did not include providing advice or consultation on the method of delivery, was belied by the record, which reflected that he had advised the nurse midwife of the decedent, among other things, "to 'proceed with caution'" during the delivery based on the results of the decedent's ultrasound (id.).
Contrary to the majority's determination, the facts here are quite comparable to those set forth in Romanelli. Much like the medical record proffered in Romanelli, the decedent's medical records here—submitted by the radiology defendants in support of their motion for summary judgment—demonstrate that the regular practice of the radiology defendants was to document the decedent's complaints and to schedule or recommend follow-up clinical care and further diagnostic testing when they deemed it necessary (see id. at 855-856). These records show that Hudson Valley and its radiologists did not limit their role to simply interpreting and documenting the results of mammography films (see e.g. Mosezhnik v Berenstein, 33 AD3d at 897; see generally Neyman v Doshi Diagnostic Imaging Servs., P.C., 153 AD3d at 546). Thus, contrary to the determination of the majority, the radiology defendants expanded the scope of the duty of care typically ascribed to a radiologist.[FN1]
The majority's conclusion that the notation on the mammography worksheet—that the decedent stated that she experienced pain in her left breast—is insufficient to expand the duty of care owed by the radiology defendants ignores other portions of the decedent's medical records. As explored supra, those medical records show that it was Hudson Valley's regular practice to provide a recommendation of further clinical care and diagnostic testing depending on the decedent's symptoms at the time of the mammogram, as well as the results of the mammogram (see Romanelli v Jones, 179 AD3d at 855-856; see generally Mosezhnik v Berenstein, 33 AD3d at 897). Indeed, even Blumberg's incorrect notation on the decedent's April 2010 mammogram report that the decedent was "asymptomatic" is evidence that the radiology defendants had assumed the more expansive duty of care. The record in this case is replete with evidence that the radiology defendants documented the symptoms presented by the decedent at the time of the mammograms, and also scheduled or recommended follow-up diagnostic testing or clinical care, when they deemed that such were warranted.
Thus, the radiology defendants did not establish, prima facie, that they discharged their duty to the decedent in accordance with accepted practice for radiologists who have assumed a more expansive scope of duty of care to schedule or recommend further clinical care or testing based on the patient's symptoms and/or the mammography findings (see e.g. Romanelli v Jones, 179 AD3d at 855-856; Oliver v New York City Health & Hosps. Corp., 178 AD3d at 1059).
Significantly, although the radiology defendants' expert, who herself had worked for Hudson Valley and interpreted two of the decedent's earlier mammograms, concluded that Blumberg's interpretation of the April 2010 mammogram was in conformity with accepted practices, the expert failed to opine that Blumberg complied with the typical practice and procedure of Hudson Valley such that he met the standard of care required by a radiologist who had assumed an expansive scope of duty of care to the decedent. Notably, the expert's averment as to the litany of activities undertaken by the radiology defendants belies her contention that their role was limited to reading and interpreting the mammograms. She noted that Hudson Valley's radiologists documented the decedent's complaints and recommended clinical follow-up, and also recommended and scheduled diagnostic testing.
However, although the facts about which the radiology defendants' expert opined demonstrated that the radiology defendants assumed a more expansive duty of care to the decedent than a typical radiologist, she did not and could not opine that the radiology defendants met that duty of care. The medical records of the radiology defendants show that Blumberg failed to schedule or urge further follow-up when warranted and that he failed to include significant information in the April 2010 report that would affect his or other health care providers' professional judgment regarding follow-up clinical care and diagnostic tests for the decedent. Specifically, the medical [*4]records show that Blumberg's April 2010 report failed to document the decedent's complaint of pain in her left breast at her mammogram, which was memorialized in the MRI worksheet given to Blumberg, and that Blumberg erroneously noted in his April 2010 report that the decedent was asymptomatic. Thus, there are triable issues of fact as to whether the radiology defendants met the appropriate standard of care due to the decedent under the circumstances of this matter (see Maggio v Werner, 213 AD2d 883, 884).
Moreover, "'[c]onclusory statements set forth in an affirmation of a medical expert which do not refute or address the specific allegations of negligence made by the plaintiff in his or her complaint and bill of particulars are insufficient to make a prima facie showing that a defendant physician is entitled to judgment as a matter of law'" (Ross-Germain v Millennium Med. Servs., P.C., 144 AD3d 658, 659-660, quoting Bendel v Rajpal, 101 AD3d 662, 663). Here, the expert's opinion submitted by the radiology defendants is conclusory, speculative, and without a basis in the record (see Oliver v New York City Health & Hosps. Corp., 178 AD3d at 1059; see e.g. Tomeo v Beccia, 127 AD3d 1071, 1072). The expert did not address the plaintiff's allegations in the bill of particulars that Blumberg failed to document relevant symptoms of the decedent in his April 2010 report and failed to recommend that the decedent should follow up with clinical care and, thereafter, if warranted, a diagnostic mammogram and ultrasound.
Notably, the expert's averment that "there were no physical signs, symptoms and complaints which Dr. Blumberg failed to address" was factually wrong. The record shows that Blumberg did not address the decedent's complaint of left breast pain and erroneously noted in the mammogram report that the decedent was asymptomatic. Thus, among its other deficiencies, the affirmation of the radiology defendants' expert relied upon incorrect facts (see Gray v South Nassau Communities Hosp., 245 AD2d 337, 337).
The radiology defendants also failed to establish, prima facie, that any departure by Blumberg in failing to properly note the decedent's complaints was not a proximate cause of the injuries caused by the delay in diagnosing and treating her breast cancer (see Romanelli v Jones, 179 AD3d at 856-857; Oliver v New York City Health & Hosps. Corp., 178 AD3d at 1059). The deposition testimony of the decedent's health care providers did not establish, prima facie, that each of them would have treated the decedent in the same manner if Blumberg's April 2010 report had documented complaints of breast pain. Since the radiology defendants failed to show, prima facie, that the decedent's health care providers would have provided the same treatment to the decedent if Blumberg's April 2010 report had noted the decedent's alleged complaint of breast pain, the radiology defendants did not establish that Blumberg's departure from the standard of care, which the plaintiff alleges caused her diagnosis to be in May 2011 rather than in May 2010, did not proximately cause the decedent's injuries. Moreover, the expert's affidavit proffered only conclusory and speculative assertions regarding the absence of a causal link between the radiology defendants' alleged departures and the injuries to the decedent (see Stiso v Berlin, 176 AD3d 888, 890; Gray v Patel, 171 AD3d at 1144).
Thus, under the facts of this case, I disagree with the majority's determination that the duty of care owed by the radiology defendants was limited to reading and interpreting the decedent's mammography films. Since the radiology defendants failed to show that they complied with the expanded duty of care which, under the facts of this case, they owed to the decedent, they did not establish their prima facie entitlement to judgment as a matter of law. Thus, it is unnecessary to review the sufficiency of the plaintiff's opposition (see Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853).
Accordingly, I agree with the Supreme Court's denial of summary judgment to the radiology defendants and thus would affirm the September 2017 order insofar as appealed from.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: As noted, supra, a Hudson Valley mammography report prior to Blumberg's April 2010 report demonstrates that Hudson Valley's practice was that a notation of "left breast pain" would have triggered it to make a recommendation for further follow up treatment such as a clinical evaluation, as well as recommending and scheduling a diagnostic mammogram and ultrasound if warranted.