Elstein v Hammer (2021 NY Slip Op 01962)





Elstein v Hammer


2021 NY Slip Op 01962


Decided on March 31, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 31, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, A.P.J.
SYLVIA O. HINDS-RADIX
VALERIE BRATHWAITE NELSON
LINDA CHRISTOPHER, JJ.


2018-00630
 (Index No. 2277/12)

[*1]Mark E. Elstein, et al., respondents,
v
Arthur W. Hammer, etc., et al., appellants, et al., defendants.


Heidell, Pittoni, Murphy & Bach, LLP, New York, NY (Daniel S. Ratner and Daryl Paxson of counsel), for appellants.
Silberstein Awad & Miklos, P.C., Garden City, NY (Joseph P. Awad of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the defendants Arthur W. Hammer, Kings Pulmonary Associates, P.C., and Beth Israel Medical Center/Kings Highway Division appeal from an order of the Supreme Court, Kings County (Marsha L. Steinhardt, J.), dated November 9, 2017. The order, insofar as appealed from, denied that branch of the motion of the defendants Arthur W. Hammer, Kings Pulmonary Associates, P.C., Beth Israel Medical Center/Kings Highway Division, and Ilya Blokh which was for summary judgment dismissing the complaint insofar as asserted against the defendants Arthur W. Hammer, Kings Pulmonary Associates, P.C., and Beth Israel Medical Center/Kings Highway Division.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the motion of the defendants Arthur W. Hammer, Kings Pulmonary Associates, P.C., Beth Israel Medical Center/Kings Highway Division, and Ilya Blokh which was for summary judgment dismissing the complaint insofar as asserted against the defendants Arthur W. Hammer, Kings Pulmonary Associates, P.C., and Beth Israel Medical Center/Kings Highway Division is granted.
On December 12, 2009, the plaintiff Mark E. Elstein (hereinafter the plaintiff) presented at the emergency department of the defendant Beth Israel Medical Center/Kings Highway Division (hereinafter BIMC/KHD) complaining of flu-like symptoms and intermittent high fevers. An infectious disease consult was called, and the infectious disease physician, the defendant Richard Cofsky, noted that the plaintiff had been in the Dominican Republic from November 21 to November 28 and had an insect bite that had resolved quickly. After assessing the plaintiff's symptoms and reviewing various test results, he concluded that the plaintiff was suffering from a viral syndrome or dengue fever, but doubted this was "malarial in nature." The plaintiff was admitted to the intensive care unit and assigned to the care of the defendant Arthur W. Hammer, a physician who was board certified in internal medicine and pulmonology. Hammer subsequently concluded that the plaintiff's condition was consistent with bronchitis obliterans obstructive pneumonia. After treatment with antibiotics and steroids, the plaintiff's condition improved, and on December 28, 2009, he was discharged. A flu vaccine and pneumococcal vaccine were administered to the plaintiff before his discharge.
Thereafter, on January 4, 2010, the plaintiff presented at the emergency department of nonparty New York Presbyterian Hospital (hereinafter NYPH) with a fever and complaining of dizziness at which time he was diagnosed with malaria and treated. On January 11 and January 13, 2010, the plaintiff returned to the emergency department of NYPH with complaints of leg and back pain and was ultimately diagnosed with Guillian-Barre syndrome (hereinafter GBS).
The plaintiff, and his wife suing derivatively, commenced this action, inter alia, to recover damages for medical malpractice against Hammer, Kings County Pulmonary Associates, P.C., BIMC/KHD (hereinafter collectively the defendants), and the defendant Ilya Blokh, among others. The plaintiff and his wife alleged, among other things, that as a result of the defendants' failure to diagnose the plaintiff and treat him for malaria while he was hospitalized at BIMC/KHD, as well as their administration of an influenza vaccine to him while he was acutely ill, the plaintiff suffered numerous injuries, including, inter alia, the development of GBS. The defendants and Blokh moved, among other things, for summary judgment dismissing the complaint insofar as asserted against them. The Supreme Court denied that branch of the motion. The defendants appeal from so much of the order as denied that branch of the motion which was for summary judgment dismissing the complaint insofar as asserted against them.
"A defendant seeking summary judgment in a medical malpractice action bears the initial burden of establishing, prima facie, either that there was no departure from the applicable standard of care, or that any alleged departure did not proximately cause the plaintiff's injuries. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements with respect to which the defendant has met its initial burden" (Michel v Long Is. Jewish Med. Ctr., 125 AD3d 945, 945-946; see Kiernan v Arevalo-Valencia, 184 AD3d 727, 728). While "[s]ummary judgment is [generally] not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, as [s]uch credibility issues can only be resolved by a jury" (Smith v Sommer, 189 AD3d 906, 907 [internal quotation marks omitted]; see Rodriguez v Bursztyn, 187 AD3d 1230; Castillo v Surasi, 181 AD3d 786, 788), "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (Wagner v Parker, 172 AD3d 954, 955; see Choida v Schrirripa, 188 AD3d 978, 979). "In order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Tsitrin v New York Community Hosp., 154 AD3d 994, 996 [internal quotation marks omitted]; see Choida v Schrirripa, 188 AD3d at 980).
Here, the defendants established their prima facie entitlement to judgment as a matter of law through, among other things, the deposition testimony, the medical records, and the affirmations of their experts Robert Maxfield, a physician who was board certified in internal medicine and pulmonary diseases, and Anthony Amato, a physician who was board certified in, inter alia, neurology. Both experts opined that the defendants did not depart from accepted medical practice in failing to diagnose the plaintiff with malaria and in administering the flu vaccine to him and that any alleged departure was not a proximate cause of the plaintiff's injuries (see Russell v Garafalo, 189 AD3d 1100; Jacob v Franklin Hosp. Med. Ctr., 188 AD3d 838, 840; Castillo v Surasi, 181 AD3d at 788). The defendants' experts addressed and rebutted the specific allegations of malpractice set forth in the complaint and bill of particulars (see Sheppard v Brookhaven Mem. Hosp. Med. Ctr., 171 AD3d 1234, 1235). They explained how and why the defendants did not depart from good and accepted practice. Their affirmations contained factual detail with respect to the alleged injuries, and contained more than bare conclusory assertions (cf. Garcia-DeSoto v Velpula, 164 AD3d 474).
In opposition, the plaintiffs failed to raise a triable issue of fact. The plaintiffs proffered the expert affidavit of Angelo Scotti, a physician who was board certified in internal medicine, infectious diseases, and emergency medicine. Contrary to the defendants' contention, Scotti was qualified to deliver an opinion as to whether the defendants departed from good and accepted practice in the failure to diagnose and treat malaria and in administering the flu vaccine to the plaintiff (see Kiernan v Arevalo-Valencia, 184 AD3d at 729). However, as to the alleged departure regarding the defendants' failure to diagnose and treat malaria, Scotti faulted Cofsky, the infectious disease specialist, and not the defendants, for failing to recognize the symptoms of malaria [*2]and failing to order the appropriate diagnostic tests. Although Scotti stated in a conclusory fashion that none of the treating physicians ordered the appropriate tests, and that this was a departure, he failed to state why the defendants would have been responsible for ordering such a test rather than the infectious disease specialist. "Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient" (Aaron v Raber, 188 AD3d 967, 968 [internal quotation marks omitted]; see Davison v State of New York, 180 AD3d 995 Romanelli v Jones, 179 AD3d 851, 852). The existence and scope of a physician's duty of care is a question of law to be determined by the court (see Romanelli v Jones 179 AD3d at 854). Here, the record established that Hammer's duty was limited to that of a pulmonologist/internal medicine physician and did not extend to the diagnosis and treatment of malaria. Scotti failed to address Hammer's testimony in this regard. Nor did Scotti address the opinion of the defendants' expert Maxfield, who opined that it was appropriate for Hammer to rely on an infectious disease specialist to evaluate an infectious etiology for the plaintiff's complaints, that Hammer had no reason to question the findings of the infectious disease specialist, and that a "pulmonologist/critical care" physician would not be expected to diagnose malaria as it is not a disease typically diagnosed and treated by physicians of this specialty. Thus, the plaintiffs failed to adduce any evidence that Hammer assumed a duty of care to diagnose and treat malaria, or that he departed from the applicable standard of care when he deferred to Cofsky regarding any diagnosis of malaria (see Leigh v Kyle, 143 AD3d 779, 782-783).
As to the alleged departure regarding the administration of the flu vaccine, Scotti's affidavit failed to address specific assertions made by the defendants' experts regarding this alleged departure from accepted medical practice, and was otherwise conclusory, speculative, and unsupported by the evidence (see Keun Young Kim v Lenox Hill Hosp., 156 AD3d 774, 775). Scotti failed to address the defendants' experts' assertions that the risks associated with contracting the flu, including developing GBS as a complication, far outweigh the minimal risk of unintended consequences from the vaccine, and that under the circumstances presented, it was appropriate to administer the vaccine. Moreover, Scotti's opinion that the vaccine should have been deferred because the plaintiff was "acutely ill" in that he had been in the ICU is unsupported by the record.
With regard to the element of causation, Scotti's opinion lacked probative value. While Scotti is board certified in internal medicine, infectious disease, and emergency medicine, he is not certified in neurology. Scotti failed to lay a foundation to support the reliability of his opinion regarding whether any alleged departure by the defendants caused the plaintiff to develop GBS, a neurological condition (see Kiernan v Arevalo-Valencia, 184 AD3d at 729-730; DiLorenzo v Zaso, 148 AD3d 1111, 1112-1113). Neither Scotti's affidavit nor his curriculum vitae stated that he had any familiarity with the standard of care in neurology or any experience in diagnosing or treating GBS and the causes of GBS, that he had published any articles on GBS, or that he had ever participated in any studies regarding GBS (see Feuer v Ng, 136 AD3d 704, 707; Tsimbler v Fell, 123 AD3d 1009, 1009-1010; Shectman v Wilson, 68 AD3d 848, 850). Even assuming that Scotti were qualified to render an opinion as to the causes of GBS, he failed to raise a triable issue of fact as to whether any alleged departure was a proximate cause of the plaintiff developing GBS. His affidavit failed to address specific assertions made by the defendants' experts regarding the issue of causation, and was otherwise conclusory, speculative, and unsupported by the evidence (see Keun Young Kim v Lenox Hill Hosp., 156 AD3d at 775). Scotti failed to address the defendants' experts' reasoning and opinions that there is no proof that malaria causes GBS, that delay in treatment of malaria contributes to a patient developing GBS, or that the flu vaccine causes GBS. Moreover, Scotti's assertions that GBS is one of the known complications of malaria and of flu vaccine administration, that the flu vaccine "alone more than doubles the risk of GBS," and that the combination of the flu vaccine and malaria were substantial factors in causing the injuries alleged by the plaintiff, are conclusory, speculative, and unsupported by the record.
The Supreme Court also should have granted that branch of the motion of the defendants and Blokh which was for summary judgment dismissing the cause of action alleging lack of informed consent insofar as asserted against the defendants, as the plaintiffs failed to address or specifically oppose that branch of the motion (see Spiegel v Beth Israel Med. Ctr.-Kings Hwy. Div., 149 AD3d 1127; Raucci v Shinbrot, 127 AD3d 839; Bhim v Dourmashkin, 123 AD3d 862).
Accordingly, the Supreme Court should have granted that branch of the motion of the defendants and Blokh which was for summary judgment dismissing the complaint insofar as asserted against the defendants.
Given our determination, the defendants' remaining contention regarding the Frye test (see Frye v United States, 293 F 1013 [DC Cir]) has been rendered academic.
MASTRO, A.P.J., HINDS-RADIX, BRATHWAITE NELSON and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court