Campbell v Dumont Operating, LLC (2024 NY Slip Op 51633(U))

[*1]

Campbell v Dumont Operating, LLC

2024 NY Slip Op 51633(U)

Decided on December 3, 2024

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 3, 2024
Supreme Court, Westchester County

Elizabeth Campbell, as Administrator of the Estate of THELMA CAMPBELL, Plaintiff,

against
Dumont Operating, LLC d/b/a DUMONT CENTER FOR REHABILITATION AND NURSING CARE, ABC CORPORATION, ABC PARTNERSHIP, Defendants.

Index No. 59625/2022

Attorney for Plaintiff: 
Joseph L. Ciaccio, Esq. 
Napoli Shkolnik, LLP
400 Broadhollow Road, Suite 305
Melville, New York 11747
(212) 397 - 1000
Attorney for Defendant: 
Sarah J. Bruno, Esq. 
Rubin Paterniti Gonzalez Rizzo Kaufman LLP
800 Third Avenue, Suite 902
New York, New York 10022
(646) 809-3370

William J. Giacomo, J.

In this underlying action to recover damages for negligence, medical malpractice, wrongful death, among other claims, defendant Dumont Operating, LLC d/b/a Dumont Center for Rehabilitation and Nursing Care (Dumont) moves for summary judgment dismissing plaintiff Elizabeth Campbell, as Administrator of the Estate of Thelma Campbell's complaint, pursuant to CPLR 3212: 
Papers Considered NYSCEF Doc. No. 45-66
1. Notice of Motion/Affirmation of Sarah J. Bruno, Esq./Exhibits A-L
2. Affirmation of Joseph L. Ciaccio, Esq. in opposition/Response to Statement of Material Facts/Exhibits 1-2
3. Affirmation of Sarah J. Bruno, Esq. in Reply
FACTUAL AND RELEVANT PROCEDURAL BACKGROUND
Plaintiff commenced this action with the filing of the summons and complaint on or about April 21, 2022. Dumont joined issue by filing of its answer on or about June 15, 2022. Plaintiff is commencing this action on behalf of the decedent, Thelma Campbell, who was a resident of Dumont from July 22, 2019 until April 20, 2020. The decedent was transferred to Montefiore Medical Center on April 20, 2020. She died on April 21, 2020 as a result of Covid-19 at the age of 83. The complaint alleges that Dumont was negligent and breached its duty of care in providing care and medical services to the decedent. Specifically, the complaint alleges that Dumont failed to be prepared for a foreseeable event such as an infectious disease exposure and outbreak and that Dumont failed to properly respond to the pandemic after it commenced. Separate and apart from claims related to the Covid-19 pandemic, plaintiff alleges Dumont was negligent and failed to provide the decedent with appropriate care during her admission. The bill of particulars alleges that plaintiff sustained injuries during her admission, including decubitus ulcers in her sacrum, decubitus ulcers in her right inner buttock, and heart failure, among other injuries. 
Plaintiff asserts claims for negligence, gross negligence, wrongful death and nursing home malpractice, and is also seeking punitive damages. Specifically, the first cause of action alleges a violation of Public Health Law § 2801-d and 2803-c. The second cause of action alleges "negligence pre-Covid-Pandemic," and states that defendants failed to take measures to protect the decedent at the nursing home facility from the deadly Covid-19 virus. The third cause of action, grounded in negligence following the beginning of the pandemic, also alleges that defendants failed to take the proper steps to protect the residents from Covid-19. In the fourth cause of action, plaintiff alleges that defendants failed to adhere to certain federal and state rules, and that this failure was the proximate cause of the decedent's injuries. The fifth cause of action is entitled "conscious pain and suffering," and the sixth cause of action alleges wrongful death. In the seventh cause of action, plaintiff alleges that defendants' conduct was willful and in total disregard of the decedent's well-being, constituting gross negligence. The eighth cause of action alleges nursing home malpractice that resulted in wrongful death. Plaintiff states that the decedent contracted Covid-19 while under defendants' care and that her medical condition was exacerbated by nursing home malpractice. The ninth cause of action [*2]alleges "nursing home malpractice resulting in conscious pain and suffering." In this cause of action plaintiff states that the defendants deviated from the proper standard of care, which caused the decedent pain and suffering.
Dumont moves for summary judgment dismissing the complaint. Dumont argues that the Emergency or Disaster Treatment Protection Act (Public Health Law former art 30-D, §§ 3080-3082 [repealed by L 2021, ch 96, § 1] [hereinafter the EDTPA]) bars plaintiff's claims from March 7, 2020 through plaintiff's discharge from Dumont and her subsequent death, one day later. Further, it argues that even setting aside any immunities, Dumont did not depart from applicable standards of care and no act or omission by Dumont was the proximate cause of the injuries alleged. Dumont breaks down the care and treatment into two sections and provides affidavits, testimony, the decedent's medical records, and its infection control policies, in support of its contentions.
Infection Control Policies and Procedures
Dumont argues that it is entitled to dismissal under the EDTPA, as the three requirements for immunity were satisfied. In support Dumont submits the affidavit of Quirina Naron, R.N. Naron was employed by Dumont as the Director of Nursing during the time the decedent was admitted to Dumont, and is currently employed in the same position. Naron affirmed that she was involved in developing and managing Dumont's response to the Covid-19 pandemic. Naron stated that it provided the decedent with care and treatment pursuant to the applicable laws or Covid-19 emergency rules. Specifically, she had "first-hand knowledge of the infection control policies and procedures that were enacted at Dumont in response to the Covid-19 pandemic, which were based on the directives and guidelines of governing agencies, including the United States Centers for Disease Control and Prevention (CDC) and the State of New York's Department of Health (DOH)." 
Naron explained how the care and treatment of the decedent was directly impacted by Dumont's response to the Covid-19 pandemic. For example, the directives from the governmental agencies were reviewed and revised based on the updated information, and then implemented by Dumont. Even on April 20, 2020, the date of the decedent's transfer to Montefiore Hospital, a new Covid-19 policy went into effect related to the discontinuation of isolation. Naron affirmed that Dumont also had infection control procedures in place prior to the Covid-19 pandemic, including appropriate use of Personal Protective Equipment. Further, Dumont enacted numerous measures in response to the pandemic to prevent or minimize the spread of Covid-19 within the facility, including restrictions on visitation and strict hand hygiene enforcement, among other measures. Naron affirmed that Dumont provided health care services to the decedent in good faith and made a good faith effort to shield her from exposure to Covid-19. For instance, staff who received a positive test result were instructed to stay home pursuant to the DOH guidelines. To prevent a nursing shortage, Dumont hired agency CNAs and offered incentives and bonuses to nurses working overtime .
Care and Treatment of Decedent
Dumont submits the expert witness affirmation from Lawrence, N. Diamond, M.D., board certified physician in family practice and geriatric medicine. Dr. Diamond summarized that the decedent was admitted to Dumont on July 22, 2019 following a hospitalization [*3]secondary to hypoxemic respiratory failure due to lower lobe pneumonia. In relevant part, upon admission, the decedent presented with a documented Stage II left ischium pressure ulcer. The following day, Dumont initiated a pressure ulcer care plan, which Dr. Diamond described in his affirmation. One week later, the right ischium wound was noted as being resolved. Although the decedent subsequently experienced some groin and other types of rashes, no further ulcers developed. 
Dr. Diamond stated that, as noted in the medical records, the decedent notably refused the pneumonia vaccine on October 17, 2019, November 3, 2019 and February 3, 2020. On February 20, 2020, the decedent was evaluated for congestion, wheezing and a moist cough, and was started on Augmentin and Prednisone. On April 5, 2020 the decedent was again evaluated for respiratory issues. "On April 6, 2020, results of the chest x-ray revealed mild patchy bilateral, predominantly upper lobe densities compatible with pneumonia. Her previously initiated respiratory infection care plan was updated to include 'presumptive COVID19'." She remained afebrile as of April 15, 2020 and was provided with oxygen supplementation. As of April 18, 2020, the decedent's vital signs were stable and there were no complaints documented. On April 20, 2020, at 5:02 p.m., "the decedent was noted with labored breathing despite oxygen supplementation via nasal cannula." Dumont transferred her to Montefiore New Rochelle for further evaluation. "Noted diagnoses included Covid-19, pneumonia, sepsis and hypoxia. Results of Covid testing performed on April 20, 2020, were positive for Covid-19. The Nursing Admission Profile indicates that no pressure ulcers were present on admission. An April 21, 2020 nursing progress note from Montefiore indicated that during hourly rounding the decedent was observed to not be breathing. The doctor was called and the decedent was pronounced dead at 12:21 p.m. Pursuant to her death certificate, her cause of death was Covid-19."
Dr. Diamond opined, that, under the circumstances at the time, there was nothing that Dumont could have done to prevent the decedent from contracting Covid-19 and dying as a result. Dr. Diamond described the decedent as a "a chronically ill 82-year-old woman with a history of smoking, dementia, rheumatoid arthritis, breast cancer and anemia." Prior to her admission, the decedent had suffered from shortness of breath and wheezing, had been hospitalized for acute respiratory failure and congestive heart failure, and had experienced episodes of bronchitis and pneumonia. Dr. Diamond opined "within a reasonable degree of medical certainty, that the care and treatment rendered to the decedent by Dumont was at all times rendered within the standard of appropriate and accepted medical and nursing care and did not deviate from the standard of care at any time, including during the Covid-19 pandemic, at which time the standard of care was rapidly and continuously changing. It is further my opinion that no act or omission on the part of Dumont was a substantial factor in causing any of the injuries and/or damages alleged by the plaintiff herein, including death." 
With respect to the specific allegations within the bill of particulars, Dr. Diamond opined that the decedent's ulcer was timely recognized and appropriately treated. Dr. Diamond states that, one hour before she died, Montefiore documented two small Stage II right inner buttocks decubitus ulcers. However, there were no pressure ulcers documented in the admission notes to Montefiore.
In sum, based on the affidavits and evidence submitted, Dumont argues that, based on the record, the EDTPA bars plaintiff's claims from March 7, 2020 through the date of her death. [*4]Dumont also alleges that there are no factual allegations of gross negligence or willful misconduct which would provide an exception to the EDTPA immunity. Further, the record allegedly establishes that the prevailing standard of good and accepted care was met for all the care received by the decedent and that that the care and treatment provided was not the proximate cause of any of the injuries. 
Dumont argues that plaintiff's claims are also barred by the Federal Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (the "PREP Act"), which grants broad immunity against claims related to a defendant's administration of "covered countermeasures," to limit or diagnose Covid-19, including PPE and COVID-19 tests, among others. 
In opposition, plaintiff broadly argues that Dumont failed to properly prepare and protect its residents, including the decedent, before, during and throughout the Covid-19 outbreak and pandemic. Plaintiff also broadly claims that Dumont was negligent and failed to provide the decedent with appropriate care. Plaintiff asserts that as a result of the subject malpractice and gross negligence, the decedent sustained serious and lasting personal injuries, as claimed in her Verified Bill of Particulars. 
Plaintiff argues that issues of credibility prevent summary judgment at this time. For instance, plaintiff claims two nurses had inconsistent testimony as to whether residents who were positive for Covid-19 were moved to another room. Plaintiff also alleges that Naron's affidavit is conclusory and nonspecific. Plaintiff claims that there is a lack of written record regarding the actual implementation of Dumont's Covid-19 policies and procures. As a result, Dumont allegedly failed to conclusively establish that its treatment of the decedent was specifically impacted by its response to the Covid-19 pandemic. Finally, contrary to Dumont's contentions, plaintiff has purportedly asserted a claim for gross negligence in her bill of particulars. 

DISCUSSION
Summary Judgment
"The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law." Dallas-Stephenson v Waisman, 39 AD3d 303, 306 (1st Dept 2007). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party." William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 (2013) (internal quotation marks and citation omitted). Upon proffer of evidence establishing a prima facie case by the movant, "the party opposing a motion for summary judgment bears the burden of produc[ing] evidentiary proof in admissible form sufficient to require a trial of material questions of fact." People v Grasso, 50 AD3d 535, 545 (1st Dept 2008) (internal quotation marks and citation omitted). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility." Ruiz v Griffin, 71 AD3d 1112, 1115 (2d Dept 2010) (internal quotation marks and citation omitted).
EDTPA
The EDTPA was enacted by the New York State Legislature at the outset of the Covid-19 [*5]pandemic to provide civil immunity for claims relating to health care services rendered in response to the pandemic. See e.g. Mera v New York City Health & Hosps. Corp., 220 AD3d 668, 669 (2d Dept 2023) (internal quotation marks and citation omitted) (the stated purpose of the EDTPA is to promote the "public health, safety and welfare of all citizens by broadly protecting the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency"). It was enacted on April 3, 2020, was applied retroactively to March 7, 2020, and has since been repealed. Health care services included in the immunity provision have been defined as "those related to the diagnosis, prevention, or treatment of COVID-19; the assessment or care of an individual with a confirmed or suspected case of COVID-19; and the care of any other individual who presented at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration." Id.
To be entitled to immunity under the EDTPA, a defendant must establish that three requirements were met: (1) "the services were arranged for or provided pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law, (2) the act or omission was impacted by decisions or activities that were in response to or as a result of the COVID-19 outbreak and in support of the State's directives, and (3) the services were arranged or provided in good faith." Damon v Clove Lakes Healthcare & Rehabilitation Ctr., Inc., 228 AD3d 618, 619 (2d Dept 2024) (internal quotation marks and citations omitted). However, the immunity does not apply where an act or omission constituted willful or intention criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm. 
Here, Dumont has established, their records and by Naron's affidavit, that the causes of action alleging Dumont's negligence in preventing the decedent from contracting Covid-19 and the alleged negligence in providing related treatment, should be dismissed pursuant to the EDTPA. As of March 7, 2020 and through the decedent's death on April 21, 2020, Dumont was providing health care services to residents, including the decedent, in accordance with a Covid-19 emergency rule or other applicable law. Dumont has established that its services to the decedent and other residents were impacted by its response to the Covid-19 pandemic. Finally, the Naron affidavit also established that the services were provided in good faith.
It is well settled that "[t]o defeat a motion for summary judgment . . . the opposing party must assemble and lay bare its affirmative proof to demonstrate that genuine triable issues of fact exist." Kornfeld v NRX Technologies, Inc., 93 AD2d 772, 773 (1st Dept 1983), affd 62 NY2d 686 (1984). Here, in opposition to Dumont's prima facie case, plaintiff has not done so. Plaintiff claims that there are inconsistencies in the nurse's testimonies as to how Dumont handled residents with Covid-19. Plaintiff also alleges that there is a lack of documentation of "purported infection control measures in response to the Covid-19 pandemic," and that this "casts doubt" as to whether said measures were effectively executed. However, plaintiff does not provide any expert affidavits to support these allegations and plaintiff's assertions are belied by the record. Dumont submitted various clinical policies that were provided to the staff, subject to changes, advising them of the current standards of professional practice for Covid-19. For example, under the visitations section, staff were advised that this facility will restrict entry to the facility to the extent possible during the COVID-19 pandemic/national emergency as per [*6]regulations and guidance. Staff were also provided with written updates on testing and surveillance, among other topics. 
In addition, contrary to plaintiff's contentions, Naron's affidavit was not conclusory. Naron affirmed that Dumont took measures to prevent the spread of Covid-19, and provided the steps taken to provide care and treatment to residents, including the decedent, in good faith. These measures were implemented and also changed, as direct result of Covid-19. 
Plaintiff also fails to allege any facts to support a finding of gross negligence, which would provide an exception to the immunity provided under the EDTPA. On the other hand, "[t]he pandemic-related policies and the decedent's medical records negate the allegations that defendant engaged in gross negligence because it took no preparatory steps to prevent infections." Hasan v Terrace Acquisitions II, LLC, 224 AD3d 475, 497 (1st Dept 2024). 
Accordingly, as Dumont has established that the criteria for the EDTPA have been met, it is entitled to summary judgment dismissing the Covid-19 related causes of action. See e.g. Id. at 478 (internal quotation marks omitted) (Defendant was entitled to immunity under the EDTPA as "[t]he documents submitted with defendant's motion to dismiss, including several pandemic-related policies, State Department of Health directives, and more than 1,600 pages of the decedent's medical records, demonstrate that defendant was providing health care services to the decedent under the COVID-19 emergency orders when he was infected and, before that, in accordance with applicable law; the care provided was impacted by defendant's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and the decedent was provided care in good faith"). 
Medical Malpractice and Negligence
The complaint also alleges that, as a result of Dumont's nursing home malpractice, the decedent suffered great pain and suffering. Specifically, the second cause of action alleges that Dumont was negligent prior to the beginning of the pandemic by failing to take appropriate steps to protect the residents from foreseeable outbreaks. The fourth and ninth causes of action seem to allege nursing home malpractice related to treatment prior to the pandemic or treatment unrelated to Covid-19. In the bill of particulars, plaintiff alleges the same injuries under the negligence and medical malpractice claims, including the ulcers, Covid-19, respiratory ailments and death. However, the majority of plaintiff's complaint alleges that Dumont was negligent "in furnishing medical treatment, not their failure in fulfilling a different duty. Therefore, the complaint sounds in medical malpractice and not ordinary negligence." Rivera v Advanced Allergy & Asthma Assessment & Diagnostics, P.C., 211 AD3d 759, 761 (2d Dept 2022).
"A defendant moving for summary judgment in a medical malpractice action must demonstrate the absence of any material issues of fact with respect to at least one of the elements of a cause of action alleging medical malpractice: (1) whether the physician deviated or departed from accepted community standards of practice, or (2) that such a departure was a proximate cause of the plaintiff's injuries. Where a defendant physician makes a prima facie showing on both elements, the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to both the departure element and the causation element." Rosenthal v Alexander, 180 AD3d 826, (2d Dept 2020) (internal citations omitted).
Here, Dumont made a prima facie showing of entitlement to summary judgment by [*7]demonstrating through its expert's opinion that it did not deviate from the accepted standards of medical practice or that the alleged departure was not a proximate cause of the decedent's injuries, including her ultimate death. Reustle v Petraco, 155 AD3d 658, 660 (2d Dept 2017). See e.g. Russell v River Manor Corp., 216 AD3d 827, 830 (2d Dept 2023) ("The physicians opined, within a reasonable degree of medical certainty, that the defendants did not deviate or depart from accepted community standards with respect to the prevention and treatment of the decedent's decubitus ulcers, and that the decedent's decubitus ulcers were unavoidable due to the decedent's medical condition and comorbidities"). 
Setting aside the decedent's ultimate death due to Covid-19, as noted, Dr. Diamond discussed the decedent's medical record at length, and addressed every alleged injury, including a discussion on how Dumont's actions did not cause plaintiff's injuries, and how Dumont did not depart from accepted community practice in treating the injuries. See e.g. Elstein v Hammer, 192 AD3d 1075, 1077 (2d Dept 2021) (internal citation omitted) ("experts addressed and rebutted the specific allegations of malpractice set forth in the complaint and bill of particulars. They explained how and why the defendants did not depart from good and accepted practice. Their affirmations contained factual detail with respect to the alleged injuries, and contained more than bare conclusory assertions").
In addition, Naron's affirmation described the infection control policies that were effectively in place prior to the Covid-19 pandemic. Naron affirmed that these policies were in place in a direct effort to prevent the introduction of Covid-19 to Dumont and that they were reviewed and revised as new information became available. These policies are submitted in the record. 
In opposition to Dumont's prima facie showing, plaintiff failed to raise a triable issue of fact. Plaintiff alleges, without any support, that Dumont failed to take proper steps to protect the residents from Covid-19. Plaintiff also proffers, without any support, that the decedent's medical condition was exacerbated and/or worsened under Dumont's care due to Dumont's negligence. Plaintiff does not submit anything other than an attorney affirmation and an unrelated lower Court decision from Nassau County, which is insufficient to raise a triable issue of fact. See e.g. Savage v Quinn, 91 AD3d 748, 750 (2d Dept 2012) (In opposition to the defendant's prima facie case, "the plaintiff failed to submit any affidavits of medical experts to support the claims of malpractice and to refute Parker's and Nesti's submissions. Thus, the plaintiff failed to raise an issue of fact"). 
To the extent that any remaining claims are possibly grounded in ordinary negligence, Dumont established, prima facie, that it exercised "ordinary and reasonable care to insure that no unnecessary harm befell the patient." Halas v Parkway Hosp., Inc., 158 AD2d 516, 517 (2d Dept 1990). In opposition, plaintiff failed to raise a triable issue of fact. 
Public Health Law § 2801-d and Punitive Damages
"The basis for liability under Public Health Law § 2801-d is neither deviation from accepted standards of medical practice nor breach of a duty of care. Rather, it contemplates injury to the patient caused by the deprivation of a right conferred by contract, statute, regulation, code or rule." Schwartz v Partridge, 179 AD3d 963, 965 (2d Dept 2020) (internal quotation marks omitted). Public Health Law § 2801-d (2) permits punitive damages against a [*8]medical facility where a deprivation of a patient's rights is found to be willful or in reckless disregard to the patient's rights. 
In the first cause of action, the only remaining cause of action, plaintiff alleges that Dumont violated the decedent's rights in violation of Public Health Law § 2801-d and that this violation was a proximate cause of the decedent's injuries and ultimate death. To the extent that this cause of action is premised on actions taken prior to March 7, 2020, Dumont also established its prima facie entitlement to judgment as a matter of law dismissing this cause of action "by submitting evidence that the [decedent's] alleged injuries did not arise through any action or negligence of its employees." Moore v St. James Health Care Ctr., 141 AD3d 701, 703 (2d Dept 2016). As noted, Dr. Diamond reviewed the treatment provided to the decedent by Dumont's employees, and opined that the treatment was appropriate. See Van DeVeerdonk v North Westchester Restorative Therapy & Nursing Ctr., 223 AD3d 702, 705 (2d Dept 2024) (internal quotation marks and citations omitted) ("Here, the defendants established their prima facie entitlement to judgment as a matter of law on that branch of their motion which was for summary judgment dismissing the cause of action alleging violation of Public Health Law § 2801-d by submitting the affirmation of their expert physician, who opined that the defendants exercised all care reasonably necessary to prevent and limit the deprivation and injury to the decedent, and did not violate the various federal and state regulations set forth in the plaintiffs' bill of particulars as the basis for this cause of action"). 
In opposition to Dumont's motion, plaintiff fails to specifically cite any applicable laws, statutes, or regulations that Dumont allegedly violated in support of its Public Health Law § 2801-d claim. Accordingly, plaintiff fails to raise a triable issue of fact and this cause of action which included the claim for punitive damages, is dismissed. 
In light of this decision, the Court need not address Dumont's alternative argument that claims should be dismissed pursuant to the Prep Act. The court has considered plaintiff's remaining contentions and finds them to be without merit. 

CONCLUSION
Accordingly, it is hereby
ORDERED that Dumont Operating, LLC d//b/a Dumont Center for Rehabilitation and Nursing Care's motion for summary judgment dismissing the complaint is GRANTED, and the complaint is dismissed in its entirety.
Dated: December 3, 2024
White Plains, New York
HON. WILLIAM J. GIACOMO, J.S.C.