Leary-Tucker v NYC Health & Hosp./Kings County Hosp. (2025 NY Slip Op 50922(U))

[*1]

Leary-Tucker v NYC Health & Hosp./Kings County Hosp.

2025 NY Slip Op 50922(U)

Decided on June 5, 2025

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 5, 2025
Supreme Court, Kings County

Deborah Leary-Tucker, as Administratrix of the Estate of James Leary and Deborah Leary-Tucker, Individually, Plaintiffs,

against
NYC Health & Hospital/Kings County Hospital, New York City Health & Hospitals Corp., and New Vanderbilt Rehabilitation and Care Center, Inc., Defendants.

Index No. 526164/2022

Plaintiff
Elliot B. Sinel, Esq. (sinelecf&commat;sinellaw.com)
Sinel & Olesen PLLC
7 Penn Plaza, 8th Floor
New York, NY 10001
212-465-1000
Defendants NYC Health & Hospitals/Kings County Hospital and New York City Health & Hospitals Corp.
Mario Christopher Giannettino, Esq. (mgiannettino&commat;kbrlaw.com)
Kaufman Borgeest & Ryan, LLP
200 Summit Lake Dr, Fl 1
Valhalla, NY 10595
914-449-1020
Defendant New Vanderbilt Rehabilitation and Care Center, Inc.
Anna Carmela Maria Borea, Esq. (anna.borea&commat;wilsonelser.com)
Wilson Elser Moskowitz Edelman & Dicker, LLP
1133 Westchester Avenue
White Plains, NY 10604 
914-872-7378

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s:
Seq. 1: 31 — 33, 34 — 43, 82, 89 — 91, 92 — 94, 96 — 98
Seq. 2: 44 — 46, 47 — 73, 77 — 79, 83 — 85, 86 — 88, 95
Defendant New Vanderbilt Rehabilitation and Care Center, Inc. ("New Vanderbilt") moves (Seq. No. 1) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them.
Defendant New York City Health and Hospitals Corporation ("NYCHHC"), sued herein as NYC Health & Hospital/Kings County Hospital and New York City Health & Hospitals Corp., separately moves (Seq. No. 2), for an Order, pursuant to CPLR 3212, granting summary judgment [FN1]
in their favor and dismissing Plaintiff's complaint against them.
Plaintiff opposes both motions.
Plaintiff commenced this action on September 8, 2022, asserting claims of medical malpractice, negligence, and wrongful death against all moving Defendants, and violations of the Public Health Law against New Vanderbilt, in connection to prevention and treatment of pressure ulcers.
The claims against NYCHHC arise from treatment and care rendered at Kings County Hospital from June 3, 2020 through July 30, 2020. The claims against New Vanderbilt arose from July 30, 2020 through August 7, 2020.
Decedent first presented to Kings County Hospital emergency department on June 3, 2020. He was 85 years old with complaints of cough, shortness of breath, rectal bleeding, and leg edema, and a history including diabetes mellitus and chronic kidney disease. He tested negative for COVID-19 multiple times during his hospitalization, but he was diagnosed with pneumonia and intubated on June 8. He was deemed stable for discharge to New Vanderbilt, a long-term care facility, on July 30.
At the time of his transfer to New Vanderbilt, Decedent had a stage IV sacral ulcer measuring 10 x 12 x 3 cm, an unstageable wound to the right upper back measuring 5 x 6 cm, and deep tissue injuries on his right foot, bilateral lower extremities, and left hip. He was ventilator dependent and receiving dialysis three times per week.
On August 4, Decedent received a surgical consult and debridement of the sacral ulcer, which had increased in size and exhibited necrotic tissue, foul odor, and serosanguinous drainage.
On August 6, Decedent was found unresponsive at approximately 10:15 p.m., resuscitated by EMS, and taken to non-party Richmond University Hospital. He passed away from cardiopulmonary arrest the following day, August 7, 2020, at 4:40 p.m.
As an initial matter, both Defendants argue that some or all the claims against them should be dismissed on the basis that they are immune from liability under New York's Emergency or Disaster Treatment Protection Act ("EDTPA").
The EDTPA (Public Health Law former art. 30-D, §§ 3080-3082) was enacted and signed into law at the height of New York's inundation and response to the COVID-19 pandemic in April 2020, and in the context of a host of executive orders declaring a statewide public health emergency. Recognizing the treatment of patients with COVID-19 as a "matter of vital state concern," the act afforded broad liability protections to health care facilities and professionals "from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency." The act was effective retroactively to March 7, 2020.
Under former Public Health Law § 3082 (1) (emphasis added),
"1. Notwithstanding any law to the contrary, except as provided in subdivision two of this section, any health care facility or health care professional shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services, if:
(a) the health care facility or health care professional is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law;
(b) the act or omission occurs in the course of arranging for or providing health care services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and
(c) the health care facility or health care professional is arranging for or providing health care services in good faith."
Subdivision (2) of the statute provided an exception wherein facilities and providers could be held liable for "willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm . . . provided, however, that acts, omissions, or decisions resulting from a resource or staffing shortage shall not be considered to be willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm."
At the time of enactment, Public Health Law § 3081 (5) defined "health care services" broadly to include "the care of any individual who presents at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration," and that version of the statute remains the applicable law for patients treated from March 7, 2020 until August 3, 2020 (see L 2020, ch 56, pt. GGG; Mera v New York City Health and Hosps. Corp., 220 AD3d 668, 669-670 [2d Dept 2023]; Ruth v Elderwood at Amherst, 209 AD3d 1281 [4th Dept 2022]).
The scope of the EDTPA was later narrowed by the legislature. Under the second version of Public Health Law §§ 3081 and 3082, effective August 3, 2020, the "any individual who presents at a health care facility" subclause was deleted. From that date forward, the act applied only to health care services specifically related to "(a) the diagnosis or treatment of COVID-19, or (b) the assessment or care of an individual as it relates to COVID-19, when such individual has a confirmed or suspected case of COVID-19" (see L 2020, ch 134; Lara v S&J Operational, LLC, 237 AD3d 1186, 1188 [2d Dept 2025]).
The EDTPA was repealed on April 6, 2021. The bill contained no express language on whether the repeal was retroactive, but it has been consistently held by all four Appellate Divisions that the repeal was not retroactive and that the act remains in force for claims that [*2]arose before the repeal date. Thus, covered health care facilities and professionals are still immune from liability with respect to treatment and care rendered on the dates when the original and amended versions of the EDTPA were in effect (see Gonnelly v Newburgh Operations, LLC, 236 AD3d 866, 868 [2d Dept 2025]; Damon v Clove Lakes Healthcare and Rehabilitation Ctr., Inc., 228 AD3d 618, 619 [2d Dept 2024]).
In a motion for summary judgment based on EDPTA immunity, the moving defendant must demonstrate "that the conditions for its entitlement to immunity under the EDTPA were satisfied" (Gonnelly at 868). It is essentially the defendant's burden to establish prima facie that (1) the defendant was a health care facility or professional acting in good faith, (2) the alleged acts or omissions occurred in the course of providing health care services during the COVID-19 emergency period, and (3) "the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives" (Pub Health Law §§ 3082 [1]).
In support of their motion for summary judgment, NYCHHC submits, inter alia, an affirmation from Dr. Rajesh Verma ("Dr. Verma"), the Chief Medical Officer at Kings County Hospital and former Chief of the Emergency Department at Kings County Hospital. Dr. Verma held the latter position at the time when Decedent was treated at the hospital and has personal knowledge of the impact of COVID-19 upon the facility.
Dr. Verma affirms that during the time Decedent was treated at Kings County Hospital in June-July 2020, the hospital provided health care services in accordance with the COVID-19 emergency rules. He states that Decedent's care was directly affected by the hospital's COVID-19 protocols in multiple ways from his first presentation on June 3, 2020 with cough and shortness of breath among other symptoms. Decedent was screened for COVID-19 during his intake assessment, required to wear a mask, and tested for COVID-19 by nasal swab multiple times during his admission due to respiratory symptoms and fever. While those test results were pending, he was on "contact, droplet, and airborne precautions" and all staff were required to wear personal protective equipment (PPE).
Dr. Verma states that although Decedent tested negative for COVID-19 during his admission and was placed in the non-COVID-19 section of the ICU, mitigation procedures still required staff to wear "full PPE" while he was on a ventilator, receiving BiPAP oxygen therapy, and while his dialysis was monitored, to limit his risk of exposure. Dr. Verma also states that the effect of COVID-19 on equipment stockpiles had an impact on his treatment, as his ventilator and renal replacement therapy machine required disposable components.
Dr. Verma states that Decedent's physician prepared a COVID-19 Attestation Form prior to Decedent's colonoscopy, stating that the procedure was medically necessary/essential and could not be deferred. He notes that this language was originally created because "all elective surgical procedures were suspended by the Governor's Executive Order" during the early stage of the pandemic, but at the time of Decedent's hospitalization it was used to document that his procedure was necessary "without a confirmed negative COVID-19 test."
During the pandemic surge, Dr. Verma notes that new ICU spaces were created, and critical care staff were "supplemented by temporary recruits, volunteers, and Department of Defense medical personnel," who "unquestionably would have been assigned" to Decedent as an ICU patient in June-July 2020.
Additionally, NYCHHC submits an affidavit from Diahann Singh, RN, who held the position of Director of Nursing for the Emergency Department at Kings County Hospital in 2020. Speaking from her personal knowledge, RN Singh affirms that at the time of Decedent's [*3]admission, he was screened for his COVID-19 symptoms (cough and shortness of breath) and treated as a "person under investigation", separated from other patients for several days until COVID-19 was ruled out by a nasal swab test. She also notes that at the time of his colonoscopy, Decedent had not yet tested negative for COVID-19, so a physician attested that the procedure was "clinically necessary" in accordance with the state Department of Health directives.
RN Singh states that during Decedent's two-month admission, "many of the staff caring for him were 'surge staff' under Kings County Hospital's pandemic emergency staffing," including "medical students, retirees and out-of-state healthcare providers" who were brought in to assist with the high volume of patients during the COVID-19 wave and underwent ICU orientation and training.
Based on these submissions, NYCHHC has met their prima facie burden of establishing that the EDTPA applies to the claims against them herein. First, it is undisputed that NYCHHC was a health care facility which was authorized to provide health care services under the Public Health Law and did so in good faith.
Second, it is undisputed that the alleged acts and omissions occurred "in the course of arranging for or providing health care services." As previously discussed, the first version of Public Health Law § 3081 (5), effective throughout Decedent's admission to Kings County Hospital, defined health care services very broadly to include any individual who "presents at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration."
Finally, NYCHHC has established that Decedent's care was directly impacted by the ongoing COVID-19 outbreak in June through July 2020, in ways such as screening and testing, use of PPE and masks, special protocols for undergoing surgical treatment, equipment availability, and staffing shortages supplemented by volunteers and government personnel.
Having met all these conditions, NYCHHC has demonstrated their entitlement to "immunity from any liability . . . for any harm or damages alleged to have been sustained" in the course of the health care services provided to Decedent from June 3, 2020 through July 30, 2020. Plaintiff has asserted no claims or allegations against NYCHHC which fall under the "gross negligence and willful misconduct" exception to the EDTPA (see Martinez v NYC Health and Hosps. Corp., 223 AD3d 731, 732-733 [2d Dept 2024]; Lara, 237 AD3d 1186).
In opposition, Plaintiff fails to raise any issue of fact as to NYCHHC's immunity under the EDPTA. The act provided broad immunity to health care providers for alleged harms which occurred during and were impacted by the COVID-19 emergency. Accordingly, summary judgment is granted to NYCHHC, and Plaintiff's complaint against them is dismissed in its entirety.
Turning to the motion of New Vanderbilt (Seq. No. 1), the movant addresses the pre-amendment version of the EDTPA in their attorney affirmation, as well as Governor Cuomo's Executive Order 202.10 which expressly stated that immunity applied to medical recordkeeping requirements and regulations. Of note, the First Department and many lower courts have found that Executive Order 202.10 need not be considered as providing an "independent basis for complete immunity," as the EDTPA was essentially "a codification of the immunity contained in Executive Order 202.10, such that the Executive Order was 'subsumed' into the EDTPA" (Holder v Jacob, 231 AD3d 78, 89-90 [1st Dept 2024] [internal citations omitted]).
The movant does not address the post-amendment version of the EDTPA, which took effect on August 3, 2020 and narrowed the definition of "health care services" to COVID-19-specific treatment. New Vanderbilt argues solely that they are immune from liability as to [*4]Plaintiff's claims prior to August 3, 2020.
The only evidence offered by the movants as to the "impact" of COVID-19 on New Vanderbilt from July 30-August 3, 2020 is a single line in the expert affirmation, which states that "during this time . . . the focus of the facility was primarily on dealing with and limiting exposure to the COVID-19 virus, the pandemic itself, and caring for its residents."
Unlike the submissions from NYCHHC, there is no affidavit from any party with personal knowledge of Decedent's treatment at New Vanderbilt or the facility's specific protocols and practices that were impacted by COVID-19. The opinion set forth by the expert as to the general impact of COVID-19 and the "focus" of the facility is conclusory, speculative, and unsupported by any evidence in the record. The additional arguments involving suspended religious services and visitation are improperly raised by New Vanderbilt for the first time in their reply papers and fail to satisfy their initial burden.
For this reason, the Court finds New Vanderbilt has not met their prima facie burden of demonstrating the EDTPA immunity statute applies to any of the claims against them, and the motion is denied on that basis.
Notwithstanding the above, New Vanderbilt also seeks summary judgment on the merits, based on the opinions of a medical expert.
In evaluating a summary judgment motion in a medical malpractice action, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure" (Rosenzweig v Hadpawat, 229 AD3d 650, 652 [2d Dept 2024]). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (Martinez v Orange Regional Med. Ctr., 203 AD3d 910, 912 [2d Dept 2022]). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (Rosenzweig at 652 [2d Dept 2024] [internal quotation marks and citations omitted].) However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (Barnaman v Bishop Hucles Episcopal Nursing Home, 213 AD3d 896, 898-899 [2d Dept 2023]).
In support of their motion, New Vanderbilt submits an expert affirmation from Roy J. Goldberg, M.D. ("Dr. Goldberg"), a licensed physician board certified in internal medicine with advanced qualifications in geriatric medicine.
Dr. Goldberg opines in detail that all treatment rendered during Decedent's seven-day admission to New Vanderbilt was in accordance with the standard of care. Specifically, he opines that the staff at New Vanderbilt "properly assessed the decedent's condition including his wounds on admission," identifying and measuring each of his preexisting pressure ulcers and deep tissue injuries. The expert opines that a wound care plan was promptly implemented including dressing changes, topical ointments, and turning and positioning changes every two hours. The expert opines that the standard of care requires "a baseline care plan be implemented within the first 48 hours of admission," and in Decedent's case, all interventions were initiated within 24 hours by July 31, 2020.
The expert also opines that timely labs and chest x-ray were performed, as well as a timely debridement of the sacral ulcer on August 4, 2020. Two wound care consultations were [*5]performed a week to address his sacral ulcer and other pressure injuries, which the expert opines was in compliance with the standard of care. The expert opines that his condition and hygiene were "consistently monitored" as reflected by progress notes on all his dates of treatment. When he exhibited signs of respiratory infection on August 6, the expert opines that he was appropriately and timely treated with antibiotics and given a chest x-ray, and that his family and health care proxy were consulted but declined to transfer him to a hospital at that time.
On the issue of proximate causation, the movant's expert opines that Decedent was "critically ill" throughout his seven-day admission to New Vanderbilt, having already suffered a stroke and various comorbidities, and he was "completely dependent on staff and machines to move, eat, and breathe." The expert opines that it was his significant conditions "including diabetes mellitus, hyperlipidemia, [and] ventilator dependent status post respiratory failure" which caused his overall decline and death, not his pressure injuries.
Finally, the movant's expert opines that for the same reasons outlined above, the staff at New Vanderbilt did not violate the Public Health Law, because they "undertook all care reasonably necessary" to prevent his claimed injuries.
The movant's expert has established prima facie entitlement to summary judgment as to all the claims against them, setting forth detailed opinions as to the standard of care and proximate causation. The burden shifts to Plaintiff to raise an issue of fact.
In opposition, Plaintiff submits an expert affirmation from a licensed physician, [name of expert redacted], board certified in internal medicine and geriatric medicine.
Plaintiff's expert opines that New Vanderbilt deviated from the standard of care "by failing to turn and reposition the Plaintiff's decedent every two hours" and "more frequently if the two-hour turning schedule has failed." The expert acknowledges that there are orders in the record for two-hour turning and repositioning, and that "New Vanderbilt's medical records contain specific pages that document when turning and positioning did take place and to what position the Plaintiff's decedent was turned." However, Plaintiff's expert points to one specific period on July 31, 2020 when there was an "unexplained gap" in the turning and positioning chart as evidence that Decedent was not turned between the hours of 1:00 p.m. and 11:00 p.m. on that date.
Plaintiff's expert further states that New Vanderbilt's providers failed to update their care plan and order turning and positioning "more frequently than every two hours" when it was known the existing plan had "failed." The expert opines that "greater care, attention, and tailored instructions as to turning and positioning" should have been given.
Plaintiff's physician expert addresses the issue of proximate causation by stating that the alleged failure to properly turn and reposition Decedent proximately caused the deterioration of Decedent's pressure ulcers. The expert opines that Decedent "should never have developed pressure ulcers on his body" and "pressure ulcers have been recognized as a medical error that should never occur."
Plaintiff also submits an expert affirmation from Charlotte Sheppard ("RN Sheppard"), a registered nurse board certified in gerontological nursing.
RN Sheppard acknowledges that "throughout the Progress Notes, it is noted that [Decedent] was to be turned and positioned every two hours by the Defendant's staff," and also notes that there are care plans in the record including "provide pressure reducing mattress" and "maintain turning and positioning as recommended." However, she states there are "unexplained gaps" in the patient's position chart, specifically on July 31, 2020 between the hours of 1:00 p.m. and 11:00 p.m., which do not show when and into which position he was turned. She also notes [*6]that Decedent was provided with a pressure-relieving air mattress on August 1, 2020, but states that "it is unclear if the Plaintiff's decedent was continuously provided with an air mattress" because that is the only date on which it was mentioned in the progress notes.
Plaintiff's expert submissions fail to raise a genuine, triable issue of fact as to whether New Vanderbilt departed from the standard of care in treating Decedent's multiple preexisting pressure ulcers during his seven-day admission. "In order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Elstein v Hammer, 192 AD3d 1075 [2d Dept 2021] [internal citations omitted])
Plaintiff's experts fail to address any of the detailed opinions of the movant's expert, nor do they address the ample evidence in the record that Decedent's pressure ulcers were consistently assessed and his treatment included pressure-relieving devices, turning and positioning instructions, ointments, and debridement. The sole basis of the experts' opinion that Decedent was not properly turned and repositioned arises from a "gap" in documentation on his second date of treatment, July 31, 2020, but "failure to document each element of the skin care protocol does not equate to a failure to perform each element or to a cause of the ulcer itself" (Braunstein v Maimonides Medical Center, 161 AD3d 675 [1st Dept 2018]).
The experts also opine that changes should have been made to implement "more frequent" turning and positioning, due to the fact Decedent's sacral pressure ulcer grew larger in size, but these statements are conclusory and do not articulate the applicable standard of care.
On the issue of proximate causation, the physician also fails to address any of Decedent's multiple co-morbidities, which the movant's expert opined was the source of his overall decline and death, as well as making the deterioration of his preexisting wounds "clinically unavoidable." The expert only states in a conclusory manner that Decedent's sacral pressure ulcer deteriorated due to improper turning and positioning.
Finally, Plaintiff's experts are wholly conclusory and lack any evidence that the conduct of the providers at New Vanderbilt was "in willful and/or reckless disregard" for Decedent's rights under Public Health Law, and they have therefore failed to raise a triable issue of fact as to those claims. Thus, the submissions from Plaintiff have not raised an issue of fact sufficient to defeat New Vanderbilt's prima facie showing of entitlement to summary judgment, and the action shall be dismissed in its entirety.
Accordingly, it is hereby:
ORDERED that Defendant New Vanderbilt's motion (Seq. No. 1) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them, is GRANTED; and it is further
ORDERED that Defendant NYCHHC's motion (Seq. No. 2), for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them on the basis of immunity under the EDTPA, is GRANTED.
The Clerk shall enter judgment in favor of NEW VANDERBILT REHABILITATION AND CARE CENTER, INC. and NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, sued herein as NYC HEALTH & HOSPITAL/KINGS COUNTY HOSPITAL and NEW YORK CITY HEALTH & HOSPITALS CORP.
This constitutes the decision and order of this Court.
ENTER.
Hon. Consuelo Mallafre Melendez
J.S.C.

Footnotes

Footnote 1:Plaintiff argues in their opposition that Defendant NYCHHC failed to attach a Statement of Material Facts as a separate document in compliance with Uniform Court Rules 202.8-g. However, it is in the discretion of the Court whether to order compliance, deny the motion without prejudice to renewal, or disregard this non-fatal defect. As the movants have set forth the material facts with citations to evidence in their attorney affirmation and expert affirmation, and Plaintiff has responded accordingly, the Court shall consider their motion on its merits.