| Lewis v Janczuk |
| --- |
| 2025 NY Slip Op 31315(U) |
| April 16, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 506587/2018 |
| Judge: Consuelo Mallafre Melendez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 15 of the Supreme
Court of the State of NY, held in and for
the County of Kings, at the Courthouse,
at 360 Adams Street, Brooklyn, New
York, on the 16th day of April 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------------X
SARAH LEWIS,

        Plaintiff,

   -against-

PETER JANCZUK, CHINYERE AJAH, as Executor of the
Estate of MARCEL AJAH, KELVIN JACK, FLUSHING
HOSPITAL MEDICAL CENTER and WOMEN MEDICAL
HEALTH CARE & DIAGNOSTICS, P.C.,

        Defendants.

------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 506587/2018
Mo. Seq. 4 & 5

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> <u>Seq. 4:</u> 106 – 107, 108 – 121, 173, 177 – 179, 180 – 183, 191 – 193
               <u>Seq. 5:</u> 122 – 125, 126 – 140, 174, 184 – 186, 187 – 190, 194 – 195

Defendants Peter Janczuk ("Dr. Janczuk") and Flushing Hospital Medical Center ("Flushing

Hospital") move (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their

favor and dismissing Plaintiff's complaint against them.

Defendant Chinyere Ajah, as Executor of the Estate of Marcel Ajah ("Dr. Ajah"), separately

moves (Seq. No. 5) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and

dismissing all claims against them. [1]

---

[1] Upon the parties' supplemental affirmations and oral argument limited to the issue of timeliness, this Court held
both summary judgment motions shall be deemed timely in an Order dated February 7, 2025, and they are now
considered on the merits.

1

[* 1]

Plaintiff opposes both motions with respect to the medical malpractice claim. Plaintiff does not address the lack of informed consent claim against the moving defendants, and the part of the motion seeking to dismiss that claim is therefore granted without opposition.

Plaintiff commenced this action on April 2, 2018, asserting claims of medical malpractice and lack of informed consent against the defendants, in connection to a hysterosalpingogram ("HSG") performed on August 17, 2016, after which she developed an infection and sepsis.

Prior to the events at issue, Plaintiff had been a gynecological patient of Dr. Ajah at Women's Medical Health Care & Diagnostic P.C. Co-defendant Kelvin Jack ("Dr. Jack") was also an employee of the practice. Plaintiff had one child previously delivered by c-section and subsequently had difficulty conceiving. She had been diagnosed with a left ovarian cyst and fibroids at North Short University Hospital in June 2016.

On August 1, 2016, Dr. Ajah examined Plaintiff and discussed her history, complaints of "pelvic and perineal pain," and fertility issues. He documented a plan to refer her for a HSG to "rule out hydrosalpinx," a blockage caused by fluid in the fallopian tubes. According to the records, Dr. Ajah instructed Plaintiff to "return to office when menses start for HSG."

Plaintiff presented to Dr. Ajah for a follow-up appointment on August 10, 2016, and the plan of care noted "schedule diagnostic for HSG." Plaintiff testified that they discussed the procedure, and he advised her to take Tylenol afterwards. Plaintiff was instructed to return to the office in two weeks following the procedure.

On August 12, 2016, Dr. Jack—an employee at Women's Medical Health Care & Diagnostic P.C., who testified he was licensed to practice in America—signed the prescription for Plaintiff's HSG. The radiology report listed Dr. Ajah as the ordering physician.

2

[* 2]

Plaintiff underwent the scheduled HSG on August 17, 2016, by interventional radiologist defendant Dr. Janczuk at Flushing Hospital. Dr. Janczuk noted a very narrow right fallopian tube and suspicion of left hydrosalpinx. He sent his report to Women's Medical Health Care & Diagnostic P.C. by fax within 24 hours on August 18, 2016. Dr. Jack testified that he received those results on August 18, reviewed them, and did not communicate any abnormalities to Dr. Ajah.

Plaintiff testified that she tried to reach Dr. Ajah in the days after the procedure because of pain, cramping, and fever, but she was told he was away from the office on vacation and later told he had been at a funeral.

On August 26, 2016, prior to her scheduled follow-up with Dr. Ajah, Plaintiff presented to the emergency department of North Shore University Hospital with a fever and complaints of abdominal pain lasting several days. She had an elevated heart rate and white blood cell count. She was diagnosed with sepsis secondary to a tubo-ovarian abscess. She underwent multiple abdominal surgeries which included lysis of adhesions, removal of the abscess, removal of both fallopian tubes, and removal of her left ovary. She was discharged on September 7, 2016.

Plaintiff returned to Women's Medical Health Care & Diagnostic P.C. for a follow-up appointment on September 21, 2016. According to the signed medical record, Dr. Jack reviewed and discussed her HSG results with her. Plaintiff testified that Dr. Jack was not aware of the infection and surgeries that had occurred after the HSG, and she did not inform him. She did not return for further treatment.

Plaintiff alleges that Dr. Ajah departed from the standard of care in his treatment of Plaintiff, including by failing to prescribe antibiotics before or after the procedure. Plaintiff also alleges that Dr. Janczuk failed to ensure Plaintiff had been prescribed appropriate antibiotics. Plaintiff alleges these

3

[* 3]

departures from the standard of care proximately caused Plaintiff to develop an infection from the procedure and led to her resulting sepsis and surgeries.

In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure" (*Rosenzweig v Hadpawat,* 229 AD3d 650, 652 [2d Dept 2024]). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (*Martinez v Orange Regional Med. Ctr.,* 203 AD3d 910, 912 [2d Dept 2022]). "A defendant's failure to satisfy this prima facie burden requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Ciceron v Gulmatico,* 220 AD3d 732, 734 [2d Dept 2023]). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (*Rosenzweig,* at 652 [2d Dept 2024] [internal quotation marks and citations omitted].) However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023]).

In support of their motion (Seq. No. 4), Dr. Janczuk and Flushing Hospital submit an expert affirmation[2] from Evan Mair, M.D. ("Dr. Mair"), a licensed physician board certified in diagnostic radiology.

---

[2] The expert affirmation was resubmitted in defendant's reply papers, curing a defect in the affirmation language. Any error in the affirmation statement is hereby disregarded pursuant to CPLR 2001, as it did not affect the substance of the motion or prejudice the substantial rights of any party.

[* 4]

Dr. Mair opines that as the consulting radiologist performing a HSG procedure, Dr. Janczuk had a limited and "finite role" in the patient's treatment, and that role did not include a duty to prescribe antibiotics.

On the procedure itself, Dr. Mair opines that Dr. Janczuk fully complied with the standard of care. He explains that a HSG is a 10-30 minute diagnostic procedure in which contrast dye is administered through a vaginal cannula or catheter, and "the performing physician observes the flow of the contrast via a fluoroscope." The OB/GYN or radiologist performing the procedure can thus observe blockages from the fallopian tubes into the abdominal cavity and determine if there are "uterine structural abnormalities or tubal obstruction/occlusion." Dr. Mair notes that hydrosalpinx is "not an unexpected finding" and is common in fertility patients. Dr. Mair opines that Dr. Janczuk properly performed the HSG, interpreted the findings, and timely reported them to Plaintiff's referring OB/GYN by fax the following day. It was then the role of the OB/GYN, not the consulting radiologist, to "formulate a conclusion as to a patient's diagnosis, order follow-up studies, order medications, or investigate findings."

Dr. Mair further opines that it would be a *deviation* from the standard of care for Dr. Janczuk to prescribe prophylactic antibiotics or post-operative antibiotics as a consulting radiologist. He acknowledges that there is generally a 2% risk of infection from the procedure and "a hydrosalpinx increases a patient's risk of infection from an HSG in some circumstances." However, he notes that prophylactic antibiotics are not always prescribed in advance of a HSG, and it is the referring physician who makes this determination, because they have a more complete picture of the patient's clinical history, current medications, and other information that may be relevant to whether antibiotics were indicated or *contraindicated* – for example, by allergies or kidney disease. He opines that Dr. Janczuk obtained the appropriate information needed for the study, specifically her last

5

[* 5]

menstrual period and that she was not pregnant, and that the standard of care did not require further inquiry or medical judgment on whether to prescribe prophylactic antibiotics. He opines that this was in the purview of her referring gynecologist, and Dr. Janczuk was entitled to "rely upon the primary treating physician to prescribe all indicated medications and other treatment . . . given her clinical presentation and history." Similarly, he opines that Dr. Janczuk was entitled to rely on her treating physician to make any determinations on medications and treatment *after* he reported the results of the procedure. In the expert's opinion, her treatment before and after the HSG, including whether to prescribe antibiotics, was within the medical judgment of her referring gynecologist, not the consulting interventional radiologist.

Dr. Mair opines that because Dr. Janczuk did not depart from the standard of care in his treatment of Plaintiff, no acts and omissions on his part proximately caused her injuries.

Based on the movant's legal argument and expert submissions, Dr. Janczuk has established prima facie entitlement to summary judgment. "Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient" (*Abruzzi v Maller,* 221 AD3d 753, 755 [2d Dept 2023]; *Meade v Yland,* 140 AD3d 931, 933 [2d Dept 2016]). "The existence and scope of a physician's duty of care is a question of law to be determined by the court" (*Cooper v City of New York,* 200 AD3d 849, 851 [2d Dept 2021], citing *Romanelli v Jones,* 179 AD3d 851, 852-854 [2d Dept 2020]).

Here, it is undisputed that Dr. Janczuk was an interventional radiologist referred to the patient by her treating OB/GYN for a specific purpose: to perform a HSG procedure (to detect or rule out hydrosalpinx) and to review and report the findings to the referring physician. As a matter of law, the scope of his duty did not include directing further medication, testing, or treatment (*see Lopez v Micalizzi,* 232 AD3d 779, 780-781 [2d Dept 2024]). To the extent of the medical functions undertaken

6

[* 6]

by Dr. Janczuk and relied on by the patient, the movant's expert has established prima facie that he performed the August 17, 2016 HSG, reviewed and interpreted the images, and reported his findings in accordance with the standard of care.

In opposition, Plaintiff submits an expert affirmation from a licensed physician [name of expert redacted], board certified in radiology. A signed, unredacted version of this affirmation was presented to the Court for *in camera* inspection.

Plaintiff expressly "does not contest that Dr. Janczuk performed the physical acts associated with the HSG in accordance with the standard of care." Their expert does not raise any issues of fact as to performance of the procedure or interpretation of the findings. However, the expert contends that Dr. Janczuk had a duty as the interventional radiologist to ensure Plaintiff had been given prophylactic antibiotics prior to performing the procedure, whether by confirming with the patient or the referring physician. The expert also opines that the results suspicious for hydrosalpinx required him "to do more than simply fax the test results to the ordering physician's office," and he should have made a "direct call or electronic notification" to the physician, because she had an urgent condition requiring post-operative antibiotics to prevent infection.

Plaintiff's submissions fail to raise an issue of fact as to departures from the standard of care by Dr. Janczuk. The expert opines generally that there is an obligation to include prophylactic antibiotics as part of the "pre-procedure protocol" of performing a HSG, based on their stated knowledge of "policies and procedures, specifically as [pertaining] to HSGs," but they do not distinguish the role of a consulting radiologist or the treating OB/GYN who may perform the procedure themselves. Plaintiff's expert does not address the opinion of the movant's expert Dr. Mair that antibiotics are *not* always given before such procedures – due to allergies, kidney disease, conflicting medications, or other risk factors in the

7

patient's medical history which may be contraindications for antibiotics – and that it is the treating physician's role to make that judgment.

Further, Plaintiff's expert does not raise a genuine issue of fact as to the method by which Dr. Janczuk reported the results of the HSG. It is uncontested that Dr. Janczuk reported the results within 24 hours, and they were received by Dr. Jack at Women's Medical Health Care & Diagnostic P.C. the same day. The fact it was sent by fax rather than communicated by phone or email has no clear impact on the timing or the contents of the report. The expert's opinion that Dr. Janczuk had a duty to communicate the "severity" of a suspicion of hydrosalpinx and direct the referring physician to prescribe antibiotics "amounts to no more than a bare legal conclusion that is unsupported by the record and insufficient to raise a triable issue of fact" (*Leigh v Kyle,* 143 AD3d 779, 782-783 [2d Dept 2016]).

It is well established that the scope of a consulting physician or radiologist's duty may be limited where they did not assume a general duty of care over other aspects of the patient's treatment (*Neyman v Doshi Diagnostic Imaging Servs., P.C.,* 153 AD3d 538, 546 [2d Dept 2017]). Plaintiff's submissions do not raise an issue of fact as to the extent of Dr. Janczuk's role, nor do they lead the Court to expand Dr. Janczuk's duty of care beyond the performance of that procedure, which Plaintiff concedes was conducted and interpreted appropriately.

In sum, Plaintiff fails to raise an issue of fact that Dr. Janczuk departed from the standard of care in his limited role as an interventional radiologist performing the HSG and reporting his findings and impressions to the referring physician. Summary judgment in therefore **granted** in favor of Dr. Janczuk, and all claims against him are dismissed.

With respect to the part of the motion seeking summary judgment for Flushing Hospital, Plaintiff has withdrawn any claims of negligent hiring/retention and concedes the only claims against the hospital arise from vicarious liability for the alleged acts and omissions of employee Dr. Janczuk. Because this

8

[* 8]

Court finds there is no underlying liability on the part of Dr. Janczuk, the motion for summary judgment is also **granted** in favor of Flushing Hospital.

Turning to the motion (Seq. No. 5) of Dr. Ajah's estate, the movant submits an expert affirmation from Robert Berg, M.D. ("Dr. Berg"), a licensed physician board certified in obstetrics and gynecology.

Dr. Berg opines that Dr. Ajah complied with the standard of care in all treatment of Plaintiff. He opines that on August 1, 2016, Dr. Ajah properly performed a gynecological exam and referred patient for appropriate diagnostic and fertility-related tests. On the follow-up appointment on August 10, 2016, Dr. Berg opines that Dr. Ajah appropriately assessed Plaintiff as "an appropriate candidate for hysterosalpingogram" with "no contraindications" for the procedure. He opines that Plaintiff did not have any known risk factors of infection that required antibiotic prophylaxis. Specifically, he states she did not have "a history of prior infections, known masses [or] other known abnormalities." Therefore, he opines that Dr. Ajah did not depart from the standard of care in not prescribing antibiotics in advance of the scheduled HSG.

Dr. Berg states that Dr. Ajah had no further direct treatment of the patient. He opines that Dr. Ajah did not depart from the standard of care by not prescribing post-HSG antibiotics, since he was "never informed" of any abnormal findings by Dr. Jack and thus had no basis for doing so. He further opines that it was within the standard of care for Dr. Ajah to rely on Dr. Jack, "a licensed, fully-trained and experienced medical provider," to review the HSG results and inform him of any abnormalities if they required urgent intervention. The expert cites to testimony from Dr. Jack, in which he indicated one of his responsibilities was to "look through the [lab] results for Dr. Ajah to see." Dr. Jack testified that in the case of an ectopic pregnancy, he would "have to get Dr. Ajah aware and to come in and take care of that test result," but in the case of hydrosalpinx, Dr. Jack viewed it as "a chronic problem . . . that it was

9

[* 9]

not something that I should call Dr. Ajah at night." Dr. Berg opines that it was appropriate to "delegate the initial review of the test results" to Dr. Jack, and Dr. Ajah did not depart from the standard of care by not independently reviewing Plaintiff's test results when they were received.

Based on evaluation of these submissions, the movant's expert has established prima facie that Dr. Ajah did not depart from the standard of care by recommending/referring the patient for a HSG and not prescribing prophylactic antibiotics in advance of the procedure.

The movant's expert also sets forth a sufficient opinion that Dr. Ajah did not depart from the standard of care by not independently reviewing Plaintiff's radiology report on or after August 18, 2016, because all test results at the practice were seen by Dr. Jack, a "similarly qualified physician" who could "review, asses and triage patients' test results." The expert does not take a position on Dr. Jack's acts or omissions, only opines that Dr. Ajah was never informed of any "abnormal finding" or condition to act on. Thus, the movant has established prima facie that Dr. Ajah did not depart from the standard of care, and the burden shifts to Plaintiff to raise an issue of fact on this issue.

In opposition, Plaintiff submits an expert affirmation from a licensed physician [name of expert redacted], board certified in obstetrics and gynecology. The signed, unredacted version of this affirmation was presented to the Court for *in camera* inspection.

Plaintiff's expert opines that Dr. Ajah departed from the standard of care in failing to prescribe prophylactic antibiotics before Plaintiff's HSG procedure. The expert notes that on her August 1, 2016 visit, Dr. Ajah documented his suspicion of a blocked fallopian tube and hydrosalpinx, and the very reason he referred her for a HSG was to diagnose or rule out this condition. Plaintiff's expert opines that "the presence of hydrosalpinx suggests prior or ongoing inflammation, which can compromise tubal function and *increase susceptibility to ascending infections*, particularly after invasive gynecologic procedures like a hysterosalpingogram." The expert states the procedure itself "involves introducing

10

[* 10]

contrast through the cervix, which can push bacteria into the upper reproductive tract from the cervix and vagina and increase the risk of infection." Thus, the expert opines a patient with hydrosalpinx has a particularly heightened risk of latent infection, post-HSG pelvic inflammatory disease, or retrograde infection.

For this reason, Plaintiff's expert opines that it is the standard of care for a gynecologist performing or referring a patient for HSG to order antibiotic prophylaxis in advance of the procedure, typically doxycycline. The expert opines that Dr. Ajah departed from the standard of care by not prescribing the required course of prophylactic antibiotics in advance of her scheduled HSG, despite his awareness on August 1, 2016 and August 10, 2016 of her potential hydrosalpinx, i.e., fluid in the fallopian tubes.

Following the procedure, which confirmed Dr. Ajah's suspicion of hydrosalpinx, Plaintiff's expert opines the standard of care again required the patient be placed on antibiotics to ward off the strong risk of post-HSG infection. The expert acknowledges that the record is unclear as to Dr. Ajah and Dr. Jack's respective roles and responsibilities at Women's Medical Health Care & Diagnostic P.C., and that Dr. Jack never communicated the results to Dr. Ajah. However, the expert states Dr. Ajah was "the supervisory physician who was mandated to see the results, the physician who directed all care related to the patients in the medical office, and . . . the only one who could order medication for such patients," based loosely on testimony from Dr. Jack. The expert opines that Dr. Ajah therefore departed from the standard of care by failing to timely prescribe antibiotics upon the finding of hydrosalpinx and/or failing to have proper protocols in place to ensure the radiology results were reviewed and responded to. The expert further opines that even if Dr. Ajah was unavailable due to his apparent vacation or family bereavement, the standard of care required him to provide a covering physician "in the event of issues that arose post-procedure."

11

Additionally, although the movant did not argue the issue of proximate causation in detail, Plaintiff's expert sets forth an opinion that the alleged failure to prescribe antibiotics to prevent or mitigate Plaintiff's risk of infection led to her developing a tubo-ovarian abscess, sepsis, and the resulting hospitalization and surgeries she underwent after the HSG procedure.

Based on evaluation of the submissions, the Court finds that Plaintiff has raised a triable issue of fact as to Dr. Ajah's failure to prescribe prophylactic antibiotics prior to the procedure. "Where the parties adduce conflicting competent medical expert opinions, summary judgment is not appropriate, as such credibility issues can only be resolved by the trier of fact" (*Sessa v Peconic Bay Medical Center,* 200 AD3d 1085, 1085 [2d Dept 2021]). Plaintiff's expert counters the movant's opinion that she had no known risk factors for infection, offering a conflicting opinion that a HSG generally carries a risk of infection and the suspicion of hydrosalpinx alone – which was noted twice by Dr. Ajah before scheduling the procedure – is an indicator that prophylactic antibiotics must be prescribed. Thus, the Court finds Plaintiff's expert has raised a triable issue of fact as to whether Dr. Ajah departed from the standard of care by not prescribing antibiotics in advance of the HSG, and whether this was a proximately cause of her claimed injuries.

Notwithstanding the above, Plaintiff's expert does not raise a triable issue of fact as to any alleged failure to review the test results and prescribe proper post-procedure antibiotics by Dr. Ajah. It is not disputed that Dr. Ajah's last interaction with Plaintiff was on August 10, 2016, approximately one week before she underwent the HSG. The results were reviewed and signed by Dr. Jack, who never contacted Dr. Ajah about any abnormal findings. Additionally, the medical records corroborate that Dr. Jack was the physician who later examined and discussed the results with Plaintiff in her September 2016 appointment. Alleged malpractice of a treating physician is not "imputed to the absent physician" of the same professional corporation (*Hill v St. Clare's Hosp.,* 67 NY2d 72, 79 [1986]). The full record

12

does not support the expert's conclusion that Dr. Ajah had a "supervisory" role over Dr. Jack, another licensed physician, or that Dr. Ajah failed to provide a "covering physician" in his absence.

For these reasons, the motion for summary judgment in favor of Dr. Ajah is **granted to the extent** of dismissing Plaintiff's claims that Dr. Ajah failed to review the results or prescribe antibiotics after the procedure, and dismissing the cause of action for lack of informed consent, but the motion is **denied** as to the claim Dr. Ajah failed to prescribe prophylactic antibiotics.

Accordingly, it is hereby:

**ORDERED** that Dr. Janczuk and Flushing Hospital's motion (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them, is **GRANTED;** and it is further

**ORDERED** that the motion (Seq. No. 5) of Chinyere Ajah, as Executor of the Estate of Dr. Ajah, for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing all claims against them, is **DENIED** with respect to the claim Dr. Ajah failed to prescribe prophylactic antibiotics, and **GRANTED TO THE EXTENT** is dismissing Plaintiff's claim for lack of informed consent and any claims arising after the HSG procedure.

The Clerk shall enter judgment in favor of PETER JANCZUK and FLUSHING HOSPITAL MEDICAL CENTER.

This constitutes the decision and order of this Court.

**ENTER.**

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

13

[* 13]